**PIONEER HI–BRED INTERNATIONAL, INC. et al., Appellants,**

v.

**Calvin R. TALLEY, Appellee.**

**No. 8342.**

Court of Civil Appeals of Texas, Amarillo.

April 9, 1973.

Morehead, Sharp & Tisdel, Charles G. White, Plainview, for appellants.

Witherspoon, Aikin, Langley, Woods, Kendrick & Gulley, D. Wesley Gulley, Hereford, for appellee.

ELLIS, Chief Justice.

This is an appeal from an order overruling a plea of privilege in a suit for damages in a products liability case. Reversed and rendered.

The plaintiff-appellee, Calvin R. Talley, brought an action in the district court of Parmer County, Texas, against Pioneer Sorghum Company, Pioneer Hi-Bred Company and Pioneer Hi-Bred International, Inc., defendants, seeking to recover damages arising out of the purchase and use of allegedly defective corn seed which had been produced by Pioneer Sorghum Company. Pioneer Sorghum Company has been renamed Pioneer Hi-Bred Company, and at all pertinent times has been an unincorporated division of Hi-Bred International, Inc., an Iowa corporation with a permit to do business in Texas. The defendants will sometimes be herein referred to as "Pioneer Hi-Bred Company," "Pioneer," or "appellant." Pioneer filed a plea of privi-

lege seeking a transfer of the case to Hale County, Texas, its principal place of business and legal residence. Talley filed a controverting affidavit to the plea of privilege alleging that he was entitled to retain venue in Parmer County, Texas, the county of his residence, under the exceptions provided in subdivisions 7, 9a and 27 of Article 1995, Vernon's Ann.Civ.St.

The venue question was heard by the court without a jury, and judgment was entered overruling the plea of privilege. From such judgment Pioneer has brought this appeal. No findings of fact or conclusions of law were requested or made by the trial court.

The record discloses that Talley was engaged in farming operations in Parmer County, Texas. Under an exchange transaction, he acquired certain corn seed, designated as Pioneer Brand "9178," from Mike Chaney, a retail dealer in Parmer County, operating his business under the name of Western Ammonia Company. The "9178" seed, purportedly highly recommended for purposes of growing corn for ensilage, had been produced by Pioneer and purchased by the dealer from Pioneer. The primary business of Mike Chaney, operating as Western Ammonia Company, related to fertilizer, although he retailed seeds produced, not only by Pioneer, but by various other seed companies. The record indicates that Mike Chaney had entered into contracts with Pioneer whereunder he purchased Pioneer brand seeds for resale. There is no evidence showing that Pioneer sold seed in Parmer County other than to dealers such as Western Ammonia Company.

There is testimony to the effect that Talley observed that all of the bags of Pioneer "9178" corn seed which he acquired from Western Ammonia Company were labeled "medium round," but that some of the bags contained "flat" instead of round seed. After he had planted only one bag of the seed, he contacted Mike Chaney concerning the difference in the seeds.

Chaney examined the seed and then contacted Pioneer from whom he had purchased the "9178" seed. He stated that he was advised by Pioneer that the "flats" were higher priced seeds than the rounds and that there was no basis for concern about the difference in the seeds. Chaney then advised Talley to go ahead and plant the seed. The seeds planted well, came up to a good stand and the corn grew until it was approximately "knee-high." The plants then turned yellow and did not thereafter grow as uniformly, or as tall as, or produce the amount of ensilage which Talley had expected.

The evidence indicates that Talley never had any discussions concerning the seed with Pioneer, and that he had never read or relied upon any advertisement or brochures published by Pioneer regarding the seed prior to the time he planted the seed acquired from Chaney. Chaney testified that he had read and distributed Pioneer advertisements, attended a dealer's meeting and had obtained information that Pioneer "9178" would produce up to 25 tons of ensilage per acre. Talley testified that the crop here involved produced $11\frac{1}{2}$ tons per acre. Also, there was evidence to the effect Talley farmed as well or better than the average farmer in Parmer County. Talley stated that he cared for this crop as he normally cared for such crops; that he normally raised "from twenty to twenty-two and three tons per acre"; and that he considered twenty tons per acre a good yield. In his suit Talley seeks damages equal to the difference in the value of 25 tons per acre and $11\frac{1}{2}$ tons per acre upon a total of 75 acres.

In controverting the appellant's plea of privilege, Talley asserts that he is entitled to maintain venue in Parmer County by reason of the following venue exceptions set out in art. 1995, V.A.C.S.:

*Subdivision 27*, providing that foreign corporations doing business in this state may be sued in any county where the cause of action, or a part thereof, accrued, or in

any county where such company may have an agency or representative;

*Subdivision 9a*, providing that a suit based on negligence may be brought in the county where the act or omission of negligence occurred; and

*Subdivision 7*, providing that in cases of fraud, suit may be brought in the county in which the fraud was committed.

In this appeal from the judgment overruling the plea of privilege, the appellant has asserted twelve points of error. In its first point of error, Pioneer contends that no cause of action or part thereof arose in Parmer County within the meaning of subdivision 27. In its second and third points, Pioneer asserts no evidence and insufficient evidence, respectively, to support a finding that the seed produced by the appellant was the proximate cause of the damage suffered, or that the seed was defective when acquired by the appellee. In the fourth point, appellant urges that the law of strict liability does not apply to mere economic loss and that such cause of action cannot come within the exceptions of subdivision 9a, based on negligence or subdivision 27, insofar as it relates to the establishment of a cause of action or part thereof which arose in such county. In its fifth point, Pioneer insists that privity of contract is required in actions where damages for economic loss only are sought. In the sixth point, it is contended that no act of negligence occurred in Parmer County within the meaning of subdivision 9a. Points seven and eight relate to appellant's contentions that appellee's cause of action was based upon fraud occurring in Parmer County, and that in the absence of privity of contract between appellant and appellee, no cause of action based upon fraud was established within the meaning of subdivision 7. In points nine and ten, it is asserted that there is no evidence and insufficient evidence, respectively, to support a finding that the appellant had committed fraudulent acts or made fraudulent representations in Parmer County. In the eleventh and twelfth points, appellant contends that appellee failed to establish that appellant had an agent or representative in Parmer County within the meaning of subdivision 7, or that a principal-agency relationship existed between such parties.

According to the plaintiff's first amended petition, Talley bases his cause of action against Pioneer on strict liability in tort, breach of warranty, negligence and fraud and misrepresentation. In order to prevail against Pioneer's plea of privilege, the plaintiff is required to prove that his pleaded cause of action falls within one or more of the venue exceptions above set out.

■ At the outset, it appears that a basic matter for determination is whether the appellant had an agent or representative in Parmer County. After considering the evidence submitted, we have concluded that the retailer, Mike Chaney, operating as Western Ammonia Company, was an independent dealer with no authority to bind Pioneer Hi-Bred Company. From our examination of the contracts and consideration of the testimony of Mike Chaney, it appears that the contracts related to the purchase of seeds by the dealer on open account. Also, the evidence demonstrates a vendor-vendee relationship between Pioneer, as producer of the seed, and Mike Chaney, as the retail dealer, who, in turn, sells the seed to various retail customers, including the appellee. It has been held that generally, a retailer or wholesaler is not such an agent or representative of a manufacturer (producer) as to bind him contractually. Gehl Bros. Manufacturing Co. v. Price's Producers, Inc., 319 S.W.2d 955 (Tex.Civ.App.—El Paso 1958, no writ). From this record, we have concluded that a contractual relationship existed between Pioneer and Mike Chaney, the dealer only, and the retail customer, Talley, had no contractual relationship with Pioneer.

In support of its position that an agency or representative relationship existed be-

tween Pioneer and Talley, the appellee has cited the cases of Allis-Chalmers Mfg. Co. et al. v. Coplin, 445 S.W.2d 627 (Tex.Civ. App.—Texarkana 1969, no writ), and Milligan et al. v. Southern Express, Inc., 151 Tex. 315, 250 S.W.2d 194 (1952). In the Allis-Chalmers case, the manufacturer specifically required that the Allis-Chalmers form containing the warranty of the product be used by the dealer in connection with a sale to a customer or consumer. Under the facts and circumstances of that case, an intent was manifested that the Allis-Chalmers express warranty run directly to the consumer and that the dealer was authorized to make the sale and bind the manufacturer on such warranty. In *Milligan,* the evidence showed that the local agency, Northeast Texas Motor Line, actually made contracts in behalf of Southern Express, Inc. and when a contract was negotiated in behalf of Southern, there was a continuing duty on the part of Southern Express, Inc., to provide services pursuant to the contract made by Northeast Texas Motor Line. Also, the evidence showed that the local employees of Northeast had authority to accept orders and to bill the customers on behalf of Southern. These cases are distinguishable from the case at bar in that the authority of the local "agent" in the cited cases was sufficiently broad to contractually bind the "principal," while in the instant case, the relationship was primarily a vendor-vendee relationship between the producer and retailer and did not involve a situation wherein the local dealer actually contracts with a customer in behalf of the producer. We hold that no principal-agency relationship existed between Pioneer and Mike Chaney, and that Chaney was not an agent or representative of Pioneer within the purview of subsection 27. We sustain appellant's eleventh and twelfth points of error.

■ In order for the appellee to show a cause of action by reason of the alleged defective seed, whether on the basis of warranty, negligence or strict liability in tort, it is necessary to establish by sufficient evidence of probative force that such seed was in fact defective at the time of its delivery and that such defective condition was a proximate cause of the crop failure. The mere fact that there was a damage does not in itself necessarily show that there was a defect in the seed. Cruz v. Ansul Chemical Company, 399 S.W.2d 944 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.). In the case at bar, the evidence is undisputed that the seed came up to a good stand initially, and at that point the evidence indicated that the seed was free from defects when delivered to the appellee. There are obviously many factors besides defective seed which could contribute to the failure of the crop to grow and produce as anticipated. No evidence was submitted which served to eliminate other possible or likely causes of the failure of the crop or to negative the initial evidence to the effect that the seeds were not defective as demonstrated by the good stand. There was no difference shown with respect to the manner in which the "flat" or "round" seed came up or the plants therefrom grew after coming up. Under these circumstances, it is apparent that the appellee failed to prove the existence of a "causative defect" in the seed at the time of delivery. See Ralston Purina Company v. Wiseman, 467 S.W.2d 669 (Tex.Civ.App.—El Paso 1971, no writ), and Herbert v. Loveless, 474 S.W.2d 732 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.). It is our opinion that no evidence of probative force was submitted to establish that the seed was defective at the time of acquisition by the appellee, and that such alleged defective condition was the proximate cause of the damages suffered.

■ Assuming, arguendo, that sufficient evidence had been submitted to show a causative defect in the corn seed at the time of its delivery, the vital question must be resolved as to whether the loss suffered is to be regarded as an economic loss only, i. e., a failure of the product with respect

to its own value, and the product not operating to damage or injure other property or the person of the user. In this connection, it has been held that when the loss does not involve harm or damage by the product to the property or person of the user, the loss is deemed as economic loss only, in which event the principles of the law of sales apply and privity of contract is essential. Eli Lilly and Company v. Casey, 472 S.W.2d 598 (Tex.Civ.App.—Eastland 1971, writ dism'd); Thermal Supply of Texas, Inc., v. Asel, 468 S.W.2d 927 (Tex.Civ.App.—Austin 1971, no writ).

In the case of McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.1967), the Texas Supreme Court set out the strict liability doctrine and adopted Section 402A of the American Law Institute's Restatement of Torts (2d Ed) as the rule to be followed. Under that section of Restatement of Torts, the law of strict liability in torts is applied in those products liability cases involving harm to the user or consumer or to his property without any requirement of privity of contract. In the recent case of Thermal Supply of Texas, Inc., v. Asel, supra, the court gave full recognition to the guidelines set out in McKisson and distinguished between those situations in which the law of strict liability is applied, with no requirement of privity, and those applying the law of sales in which privity is required. In this connection the court stated:

> "In the better reasoned cases the doctrines of strict liability in tort has not been extended to situations involving economic loss only, but instead those cases apply the principles of the law of sales, in which privity of contract is required."

We find no instance in which the Supreme Court of Texas has extended the doctrine of strict liability beyond the guidelines set out in the Restatement of Torts adopted by the court in McKisson v. Sales Affiliates, Inc., supra.

In the instant case, the appellee testified that his only complaint concerned the lack of growth of the corn planted, and that no person was harmed or injured. It is our opinion that the evidence shows economic loss only and that the law of strict liability in tort is not applicable. Thus, we hold that the law of sales should be applied and that privity of contract between the customer and producer is required; consequently, in the absence of the showing of privity between Pioneer and Talley, Talley has shown no cause of action against Pioneer. Since the law of sales is applicable and no privity of contract has been shown, it becomes immaterial whether the allegations of the cause of action pertain to negligence or strict liability, and neither subdivision 9a nor 27, insofar as establishing a cause of action against Pioneer is concerned, are applicable as exceptions to the general venue rule that a defendant is entitled to be sued in the county of its residence.

■ The appellee contends that even if there were no privity between appellee and appellant, a cause of action would exist against the appellant on the basis that there was a breach of express warranty of appellant to appellee that the product was suitable for the purpose for which it was sold. In support of this contention the appellee relies upon the case of Ford Motor Company v. Lemieux Lumber Company, Inc., 418 S.W.2d 909 (Tex.Civ.App.—Beaumont 1967, no writ), wherein it was held that in Texas privity is no longer required in an action based upon a breach of express or implied warranty that a product is suitable for the purpose for which it is sold, citing McKisson v. Sales Affiliates, Inc., supra. In the above cited Ford Motor Company case, a venue suit, the evidence showed that the local dealer, one of the defendants in the suit and a resident of the county in which the suit was brought, was the authorized dealer for the other defendant, Ford Motor Company, and obtained the truck in question from Ford

Motor Company; that Ford Motor Company furnished the defendant dealer brochures, depicting in pictures and words the products offered for sale, which were distributed by the defendant local dealer; and that the plaintiff-customer read one of these brochures before buying the truck and relied upon the representations set out in such brochure in making this purchase. The court concluded that the manufacturer should be held responsible for its brochure advertising as an express warranty and further that it should be held responsible for economic or commercial losses where the product is not suitable for the use for which it was advertised.

The case at bar is distinguishable from the above cited Ford Motor Company case in that, under the evidence here, the plaintiff-customer had neither seen, read nor relied upon any advertising or brochures published by Pioneer Hi-Bred Company prior to his securing of the "9178" seed from Mike Chaney; rather, he obtained his total information regarding the seed through representations made by the local retailer. In any event, we do not consider that the holding in the Ford Motor Company case regarding the liability of the manufacturer for express warranty through advertising and reliance thereon by the purchaser is controlling in the instant case.

It is our opinion that, in the absence of privity or a showing of damage or harm to the user or his property, the law of strict liability within the rule announced in McKisson v. Sales Affiliates, Inc., is not applicable, and that under the facts of this case, the law of sales should be applied in which privity of contract is required. Eli Lilly and Company v. Casey, supra; Thermal Supply of Texas, Inc., v. Asel, supra. Appellant's points of error nos. 1–6 are sustained.

■ We consider next the contentions that the cause of action was based on fraud occurring in Parmer County, Texas, and whether the exception to the general venue statute set out in subdivision 7 is ap-

plicable. Since we have determined that this cause is to be governed by the law of sales in which privity of contract is required, we point out that in the absence of privity of contract or agency connecting Pioneer Hi-Bred Company with the customer, Talley, then it cannot be contended that Pioneer perpetrated any fraud in this transaction. Gehl Bros. Manufacturing Co. v. Price's Producers, Inc., supra. The general rule is that a retailer or wholesaler is not an agent or representative of a manufacturer so as to bind him contractually. Avery Co. of Texas v. Barker, 243 S.W. 695 (Tex.Civ.App.—Galveston 1922, no writ); Baylor v. Eastern Seed Co., 191 S. W.2d 689 (Tex.Civ.App.—San Antonio 1945, no writ). Also, see Sparks v. Chrysler Corporation, Airtemp Division, 353 S. W.2d 477 (Tex.Civ.App.—Beaumont 1961, no writ).

■ The record in this case discloses no evidence of the making of a false representation of an unknown fact. The appellee had actual knowledge of the existence of "flat" and "medium round" seed prior to the planting, and the labeling on the bags of seed apparently was not relied upon by the appellee to his detriment. There is no evidence as to any difference in production as between the two kinds of seeds. There is no showing of proximate cause between any alleged misrepresented fact and the damages suffered by the appellee. Thus, we conclude that there is no evidence to support a finding that the appellant had committed fraudulent acts or made fraudulent misrepresentations in Parmer County, and that the exception to the general venue statute set out in subsection 7 is not applicable in this case. Appellant's points of error nos. 7–10 are sustained.

From a consideration of all the foregoing matters, we have concluded that the appellee has not shown that his alleged cause of action comes within the venue exceptions set out in either subsections 7, 9a or 27 of art. 1995, V.A.C.S. Accordingly,

the judgment of the trial court overruling the plea of privilege is reversed and rendered, and it is hereby ordered that the cause be transferred to the district court of Hale County, Texas.