289 So.2d 376 (1973)
Dr. Charles H. BAUGHMAN
v.
QUALITY MOBILE HOMES, INC., and Winnebago Industries.
No. 9589.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 15, 1974.
*377 William A. Norfolk, Baton Rouge, for appellant.
Joseph P. Brantley, IV and George R. Covert, Robert L. Kleinpeter, Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
LOTTINGER, Judge.
This is a suit for the recision of the sale of a Dodge Winnebago Motor Home on grounds of redhibition. In the alternative, the petitioner seeks a reduction of the purchase price. Petitioner is Dr. Charles H. Baughman, while the defendants are Quality Mobile Homes, Inc., the seller, and the Winnebago Industries, the manufacturer. Quality Mobile Homes filed a third party petition against Winnebago Industries. Following trial of the matter, the Lower Court awarded judgment in favor of petitioner and against defendants, in solido, in the sum of $18,437.58, and, on the third party demand, allowed judgment in favor of Quality Mobile Homes and against the Winnebago Industries in a like amount. A third party demand by Winnebago Industries against Quality Mobile Homes was dismissed.
The evidence reflects that the petitioner purchased a Winnebago Motor Home on May 7, 1971 from Quality Mobile Homes for the sum of $15,000.00 cash. At the time of the sale, Mr. George Harold, the president and owner of Quality Mobile Homes advised petitioner that it would be *378 expected that there would be adjustments of minor defects on the new vehicle. He testified, however, that in view of the frequency of the complaints and work orders there were more than usual.
The petitioner's wife testified that soon after they purchased the motor home, numerous minor problems arose. Some problems were experienced with the electric refrigerator, roof air-conditioner, clothes rack in the closet, cabinet latches, and generator. Both petitioner and his wife testified that the principal problem was the leakage of rain water from the sides of the motor home which stained the side panels, drapes and upholstery and rendered the vehicle unusable during rainy weather. Neither the petitioner nor his wife were able to give the exact time they first observed this defect, however, petitioner's wife testified that she believed it was during the month of July, 1971 on an occasion when she and three friends took some youngsters to Percy Quinn Park in Mississippi. Her testimony to this effect was substantiated by the three ladies who accompanied her. They testified that during a rainstorm on the first night in the park the vehicle leaked profusely from the side windows and panels. These ladies could not recall the time of the trip, but they believed it was shortly after the petitioner acquired the motor home.
Petitioner testified that on numerous occasions he took the mobile home back to the seller for the correction of certain problems and that in most instances they were corrected. The dealer, however, was never able to correct the water leaks.
The Service Manager for Quality Mobile Homes acknowledged that they were called upon to service the vehicle on many occasions and that on at least three or four of these occasions there were complaints about the leaking. He placed the first date of the complaint regarding leakage as during February of 1972 after reviewing some work orders dealing with the various types of repairs made to the vehicle. Two of the service orders did not reflect the date of the repairs nor mileage of the vehicle when it was brought in. The first service order reflecting a complaint about leakage was February 7, 1972.
After numerous complaints and service calls because of the leakage, Quality Mobile Homes was finally able to repair the windows and replace the water stained material. The petitioner has since been advised that his motor home had been repaired and was ready but he has refused to pick up the vehicle.
The witnesses from Quality Mobile Homes testified that the vehicle has remained on their lot since that date (February 7, 1972) until the date of the trial and despite many rainstorms there has been no further evidence of water leaks in the vehicle. The Lower Court inspected the vehicle and found all the upholstery and curtains were new and unstained.
Petitioner contends that the evidence shows that the vehicle had not performed in the manner for which it was intended and that, as such, petitioner would not have purchased the vehicle had he known of the vices and defects in it. Defendants, on the other hand, argued that the defects in the vehicle had been corrected and that its liability is limited to the express warranties in the contract which expired before the leakage problems arose. Winnebago argues that petitioner's action in redhibition is restricted between the seller and the buyer and that despite recent jurisprudence on the subject, petitioner has no cause of action against the manufacturer except for breach of warranty.
With regard to an action in redhibition, the Louisiana Civil Code provides as follows:
"Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be *379 supposed that the buyer would not have purchased it, had he known of the vice.
Art. 2530 The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.
Art. 2531 The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.
Art. 2541 Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.
Art. 2543 The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action.
But in a redhibitory suit, the judge may decree merely a reduction of the price.
Art. 2545 The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
In the recent case of Media Production Consultants, Inc., v. Mercedes-Benz of North Amercia, Inc., et al., 262 La. 80, 262 So.2d 377 (1972), with regard to the obligation of the seller, the Court said:
"Two warranty obligations are inherent in every sale, the warranty of merchantable title and the warranty of reasonable fitness for the product's intended use. LSA-C.C. Arts. 2475, 2476.
The jurispurdence is well settled that warranty limitation provisions in automobile manuals and similar documents delivered with the vehicle has no effect upon the statutory warranty of fitness. Radalec, Inc. v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955); Hebert v. Claude Y. Woolfolk Corporation, La.App., 176 So.2d 814 (1965); Stevens v. Daigle and Hinson Rambler, Inc., La. App., 153 So.2d 511 (1963); Harris v. Automatic Enterprises of Louisiana, Inc., La.App., 145 So.2d 335 (1962); Fisher v. City Sales and Service, La. App., 128 So.2d 790 (1961); 24 La.L. Rev. 199-200 (1964). Hence, despite the warranty limitation in the Owner's Service Policy, Media has not renounced the warranty of fitness."
Furthermore, with regard to the right of the purchaser to proceed against the manufacturer, the Court held:
"MBNA strongly relies upon the absence of privity between it and the purchaser. The equation of no privity, no liability is the traditional rule that held sway for many years. Beginning with the landmark decision of MacPherson v. Buick Motor Co., supra [217 N.Y. 382, 111 N. E. 1050], in 1916, however, the privity requirement has been eliminated in product liability cases. See, e. g., Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960); Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828 (1942).
[4] Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty. Marine Ins. Co. v. Strecker, supra [234 La. 522, 100 So. 2d 493]; LeBlanc v. Louisiana Coca Cola Bottling Co., 221 La. 919, 60 So. 2d 873 (1952).
We see no reason why the rule should not apply to the pecuniary loss resulting from the purchase of a new automobile that proves unfit for use because of latent defects.

*380 [5] The Legislature has declared that the distribution and sale of motor vehicles in Louisiana vitally affect the public interest. See LSA-R.S. 32:1251. By placing automobiles on the market, the supplier represents to the public that the vehicles are suitable for use. The intervention of a franchised dealer should not mitigate that responsibility. The dealer serves only as a conduit for marketing the automobiles.
[6] The pecuniary loss resulting from an unusable vehicle is recoverable when there is an express warranty without privity. Beck v. Splindler, 256 Minn. 543, 99 N.W.2d 670 (1959); Inglis v. American Motors Corp., 3 Ohio St.2d 132, 209 N.E.2d 583 (1965); Posey v. Ford Motor Co., (Fla.App.), 128 So.2d 149 (1961); Hoskins v. Jackson Grain Co., (Fla.), 63 So.2d 514 (1953). Although there is a split of authority on the question, we find no adequate reason for not applying the same rule and allowing recovery when there is an implied warranty without privity. See Smith v. Platt Motors, Inc., (Fla.App.), 137 So.2d 239 (1962); Continental Copper & Steel Indus., Inc. v. E.C. "Red" Cornelius, Inc., (Fla.App.), 104 So.2d 40 (1958); G.M.C. Truck Co. v. Kelley, 105 Okl. 84, 231 P. 882 (1924); Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965); Lang v. General Motors Corp., (N.D.), 136 N.W.2d 805 (1965); Manheim v. Ford Motor Co., (Fla.), 201 So.2d 440 (1967). See also Beck v. Spindler, supra."
We, therefore, feel that there is ample jurisprudence permitting a recovery of damages against the manufacturer based upon a breach of warranty for a defect or vice which renders the thing absolutely useless or so imperfect that the buyer would not have purchased it had he known of the vice. It further appears that the buyer may alternatively demand a reduction of the purchase price and that the demand for recision or reduction may be available to him despite any express warranty which accompanied the sale. Under Article 2545 of our Louisiana Civil Code, a manufacturer is presumed to have knowledge of the vices or defects of the thing which it manufactures. George v. Shreveport Cotton Oil Co., 114 La. 498, 505, 38 So. 432, 434 (1905); Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906 (1911).
The Lower Court found that the petitioner sustained his burden of proving that the vehicle leaked profusely and that, accordingly, he would not have purchased it had he had prior knowledge that the leakage was the fault of the manufacturer and not the seller.
In assessing damages, the Court considered Article 2531 of the Louisiana Civil Code which provides in part: "The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale ...". Article 2545 provides that if the seller knew the vice of the thing and did not declare it, he is also liable for any damages resulting to the buyer as a result of the defects. The jurispurdence is to the effect that if the defects in the vehicle are such as would not be observed by the ordinary dealer without taking the vehicle apart minutely inspecting it, the dealer is liable only for the return of the purchase price plus the expenses of the sale. There is nothing present in this suit to indicate that the dealer should have noticed this defect. The Lower Court allowed petitioner the purchase price of $15,000.00 plus finance charges of $2,502.58 and sales tax and other fees of $935.00. We find no error in that decision of the Lower Court.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed against the third party defendant, Winnebago Industries, all costs of this appeal to be paid by defendant.
Affirmed.