**Don VERETTO, Plaintiff,**

v.

**ELI LILLY AND COMPANY,
Defendant.**

**Civ. A. No. 5–1148.**

United States District Court,
N. D. Texas,
Lubbock Division.
Jan. 24, 1974.

Jim R. Wright, Wagonseller & Cobb, Lubbock, Tex., for plaintiff.

Charles B. Jones, Evans, Pharr, Trout & Jones, John A. Flygare, Lubbock, Tex., for defendant.

MEMORANDUM AND ORDER

WOODWARD, District Judge.

Plaintiff, a farmer in Lubbock County, Texas, in 1972 planted several hundred acres of cotton on his farm which is south of the City of Lubbock, Texas. In the process of preparing this land he also applied a weed control substance known as Treflan which was manufac-

tured by the defendant corporation. The defendant, after manufacturing the Treflan, would ship it to a warehouse in Dallas, Texas and from there it was distributed to various retail outlets. The plaintiff purchased 50 gallons of Treflan from the College Avenue Co-op Gin and another 126½ gallons from Four Corners Farm Supply Center. Plaintiff then hired Four Corners to apply the 176½ gallons of the Treflan to his cotton. The plaintiff alleges in his complaint that the Treflan failed to control the weeds and he is asking for the return of the purchase price along with certain consequential damages such as the cost of extra labor needed to hoe the weeds in the cotton fields, the amount expended in applying the Treflan to the cotton fields and the loss sustained because he was forced to plow up a certain portion of his cotton which was unharvestable due to the excess weeds.

Plaintiff did not found his cause of action upon strict liability in tort but rather on a theory of breach of implied warranty of merchantability as well as the breach of certain guarantees and express warranties made by the defendant-manufacturer. The evidence showed that each can of Treflan was wrapped in a label (Defendant's Exhibit 4) which contained directions for the use of the Treflan, and there was attached thereto a smaller sheet of instructions (Defendant's Exhibit 3), showing the rate of application for various crops and types of soil, as well as a warranty card (Defendant's Exhibit 2) and a guarantee registration card (Defendant's Exhibit 2) which contained what was referred to as the "Treflan Performance Guarantee."

In response to the submitted special issues, the jury found that the defendant represented in its written guarantees and advertising that Treflan would control weeds if applied and incorporated according to directions given on the various labels and brochures; that the plaintiff relied on the guarantee and warranty so made by the defendant; that the Treflan in question in this case failed to effectively control the weeds on the plaintiff's land in the crop year 1972; and that the plaintiff followed good farming practices in applying Treflan. In Special Issue No. Four the jury specifically found that the plaintiff properly applied, incorporated and used the proper mixtures and amounts of the Treflan purchased. In connection with that Special Issue the court instructed the jury that the instructions and directions given by the defendant in its labels and pamphlets accompanying the Treflan provided the criteria by which they were to determine whether the chemical was applied and incorporated in the proper amount and manner.

They further found that the plaintiff paid a purchase of $3,919.50 for the Treflan. As consequential damages, the jury awarded $2,500.00 to compensate for extra hoeing labor which plaintiff had to hire because of the excess weeds, $521.00 for the application fee charged by Four Corners Farm Supply and $700.00 for one field of cotton which the plaintiff had to plow under entirely due to an extreme weed problem.

Defendant filed a motion for an instructed verdict and in the alternative for the court to remove the case from the jury and enter judgment for the defendant at the close of the plaintiff's testimony, renewed this motion after all parties had rested and moved for judgment notwithstanding the verdict after the verdict was received.

■ The court has determined that as a matter of law there is no privity of contract between the plaintiff and the defendant. The merchandise was purchased from independent retail dealers without any intervention in the ordinary retail sales process by the defendant that would create privity between these parties. As plaintiff bases his suit on a theory of breach of warranties, both express and implied, there can be no recovery of consequential economic damages from the remote manufacturer in this case because of the lack of privity of contract between them. Industrias Velasco v. Applied Power Equip. and Mfg. Co., 227 F.Supp. 937 (S.D.Tex.1964);

Thermal Supply v. Asel, 468 S.W.2d 927 (C.C.A. Austin 1971, no writ); Eli Lilly Company v. Casey, 472 S.W.2d 598 (C.C.A. Eastland 1971, writ dism'd w. o. j.); Pioneer Hi-Bred International, Inc. v. Talley, 493 S.W.2d 602 (Tex.Civ.App.—Amarillo 1973, no writ). Therefore, defendant's motion for judgment is granted insofar as it pertains to any recovery by the plaintiff of consequential damages as found by the jury in answering Special Issues Nos. Seven (a) and Seven (b), Eight and Nine.

■ However, the lack of privity does not bar recovery by the plaintiff for the purchase money of the Treflan under the express warranty or guarantee made by the defendant on the labels and pamphlets accompanying each can of Treflan and also under the guarantees made by defendant in their advertising program. These pamphlets, labels and guarantee cards were relied upon by the plaintiff and he is entitled to recover thereon, provided that he demonstrates compliance with the terms of the guarantee. But, as discussed above, his recovery is limited to the amount of the purchase price as the evidence is uncontradicted that the written labels and guarantees provide that the defendant will refund the purchase price of Treflan under certain conditions and that the recovery is limited to that sum. Of course, before recovery can be allowed on the basis of these warranties and guarantees, the plaintiff must show by a preponderance of the evidence that the plaintiff complied with the conditions precedent set forth in the written instructions.

Specifically the written guarantees and warranties relied upon by the plaintiff for recovery are shown by Defendant's Exhibits 2, 3 and 4. Exhibit 2 was in the form of a guarantee registration which the testimony shows was mailed in by the retail supplier registering the plaintiff's purchase and which contained the following conditions:

"1. Purchaser must complete, sign and return guarantee registration card (attached) within 30 days of his Treflan purchase.

"2. Purchaser must notify Elanco promptly if a lack of satisfactory control occurs. Such notice must be given within 90 days after the first planting or application of Treflan to treated crop, whichever occurs later.

"3. An Elanco representative must be satisfied that purchaser used Treflan according to label and must visually observe unsatisfactory control of weeds in field.

"4. Refund shall be limited to acreage on which weed control was not satisfactory and to season in which crop was treated.

"5. Purchaser has option of receiving refund in cash or an equivalent amount of Treflan, which shall be verified by his paid invoice showing price and quantity of Treflan purchased.

"6. Void outside U.S.A."

There is no dispute that the purchaser complied with condition "1" by signing and returning the guarantee registration card, that he properly notified the defendant of unsatisfactory control per condition "2" or that the representative of the defendant observed the unsatisfactory weed control as required by number "3." The dispute centers around the question of whether the plaintiff used the Treflan according to the directions for application on the label. The jury, in response to Special Issue No. Four, found that plaintiff did use the Treflan in accordance with those directions. It is defendant's position that there is no evidence in the record that would support the jury's answer to Special Issue No. Four that the Treflan was properly applied.

First, defendant contends that if this soil was of medium texture that 1¼ to 1½ pints of Treflan would have been required for each acre (Defendant's Exhibit 3, Table One, right-hand column).

Defendant's view of the evidence is that there were 176½ gallons of Treflan used and that, according to a great deal of the evidence produced, it was spread over 1,185 acres at the resulting rate of 1.19 pints per acre. Although there was much evidence to support the defendant's position, there was other evidence before the jury in the form of an estimate from the plaintiff that he spread the Treflan over only 950 acres of cotton, including the skip rows. If this figure was accepted by the jury, the resulting rate of application would be in excess of 1.25 pints per acre and well above the minimum concentration.

The defendant further contends, however, that there is no evidence whatever in the record to support a finding by the jury that the plaintiff set the disc on his plow to cut at the proper depth and that he operated the plow at the directed speed during incorporation of the Treflan. The directions listed on the label which describe the latter two requirements read as follows:

"Set *disc* to cut 3 to 4 inches deep and operate in two different directions at 4–6 m. p. h."

Plaintiff's testimony was that the Treflan was incorporated into the soil by the use of a disc but that he set the discs to cut at a depth of *two* to four inches, which he stated in his testimony was the "recommended" depth. The source of plaintiff's statement may possibly be found in the following further direction given by defendant on page 7 of the instruction pamphlet enclosed with each can:

"Incorporation of Treflan into the top 2 to 3 inches of final seedbed assures effective weed control . . .

"Shallow incorporation with implement set to cut less than 2 inches deep may result in erratic weed control."

The somewhat contradictory nature of these various directions are sufficient to support the jury's finding that the plaintiff incorporated the Treflan into

his soil at the recommended depth. The testimony is also sufficient to support a finding that plaintiff operated the plow in two different directions. The testimony to that effect is clear and the point is uncontradicted by defendant. However, the plaintiff wholly failed to introduce *any* evidence to support even an inference by the jury that the plow was operated at the recommended speed of 4–6 m. p. h. during incorporation.

The court has personally reviewed the testimony in this case in detail by having the reporter read from his untranscribed notes. This review was specifically focused on the question of whether there was any testimony concerning the speed at which the plow was driven. Plaintiff argues in his brief that, since one of the witnesses testified that the truck which sprayed the Treflan was being driven in second gear while the plow followed behind, the jury could have reasonably inferred that the plow was operated at a speed of 4 to 6 m. p. h. Such an inference is clearly unreasonable. First, it is unreasonable to assume that the truck, which is not described in the record, operates only at a speed of 4 to 6 m. p. h. in second gear. Second, the testimony does not suggest that the plow was operated directly behind the truck at all times but merely that the plow incorporated the Treflan after it had been sprayed on the ground by the truck. Finally, the testimony established that the plow was operated in a criss-cross manner as required by the directions but that the truck was driven in only one direction. In light of this testimony it is unreasonable to infer either that the truck was driven at 4 to 6 m. p. h. or that the plow followed directly behind the truck at the same speed.

Plaintiff further makes the incorrect representation in this brief that Mr. Burk, who actually applied the chemical, "testified that he was familiar with the instructions given by Elanco and Eli Lilly and Company and that he followed them." The review of the testimony reveals that Mr. Burk stated that he was

familiar with the instructions but nowhere in the record is there any testimony by him, or anyone else, that he *followed* the instructions.

■ Evidence from other witnesses substantiated defendant's position that it is very important that each of the application instructions be followed in order to obtain satisfactory weed control. The lack of evidence as to speed of incorporation is thus a material defect in plaintiff's case. In Special Issue No. Three-A the jury did find that the plaintiff followed good farming practices in applying the Treflan. But this general finding is insufficient to support a finding that the very specific procedures outlined by defendant were followed. The evidence in this case shows that even in its advertising that the defendant company limited its guarantee or warranty to the return of the purchase price and all witnesses testifying as to what this advertising contained, on radio, T.V., or otherwise, stated that it was a guarantee that the purchase money would be refunded if the Treflan did not accomplish satisfactory weed control when used in the manner directed. Plaintiff has wholly failed to introduce any evidence, either direct or circumstantial, that all the conditions limiting the express warranty were met; specifically, there is no evidence to support a finding that the plow was operated at 4–6 m. p. h. This failure is fatal to plaintiff's claim for return of the purchase price under the express warranty.

Accordingly the defendant's motion for judgment *non obstante veredicto* must be granted and judgment will be entered that the plaintiff take nothing of and from the defendant.

This Memorandum and Order will constitute any Findings of Fact and Conclusions of Law that may be necessary.

The Clerk will furnish a copy hereof to each attorney.