**NOBILITY HOMES OF TEXAS, INC., Appellant,**

v.

**John W. SHIVERS et al., Appellees.**

**No. 7808.**

Court of Civil Appeals of Texas, Beaumont.

July 15, 1976.

Rehearing Denied Aug. 5, 1976.

Charles W. Boyd, Conroe, for appellant.

J. Robert Liles, Conroe, for appellees.

DIES, Chief Justice.

Defendant below appeals from an adverse judgment rendered after a trial to the court, and we will designate the parties as they appeared in the trial court. Plaintiffs purchased a mobile home from one Marvin Hurley d/b/a Lakeview Mobile Homes, an independent dealer in Baytown, who has since gone out of business and cannot be located. Hurley had previously purchased this unit from the defendant, the manufacturer thereof. Hurley was not an agent for the defendant.

Plaintiffs alleged, and the trial court found, that the mobile home was defectively constructed; that at the time Hurley delivered it to plaintiffs, it was not free from defects in workmanship and material; that it was not fit for the purposes for which it was sold (i. e., a place of habitation); and that the difference in the reasonable market value thereof at the time of the purchase and the original contract price was $8,750. Judgment was rendered for plaintiffs for such amount from which this appeal has been perfected. We affirm.

By defendant's first point of error, it asserts that it could not be liable for any damages to plaintiffs because there was no privity of contract between them, and plaintiffs are only seeking economic loss.

The question of whether there must be privity of contract between parties before one may recover for purely economic damages to a product and its resulting diminution in value has not been firmly answered in this State. Comment "Implied Warranties and 'Economic Loss'" 24 Baylor L.Rev. 370 (1972). The current weight of authority in this jurisdiction, as stated by the dissent, seems to be that such privity is required. See, e. g., *Foremost Mobile Homes Mfg. Corp. v. Steele*, 506 S.W.2d 646 (Tex. Civ.App.—Fort Worth 1974, no writ); *Thermal Supply of Texas, Inc. v. Asel*, 468 S.W.2d 927 (Tex.Civ.App.—Austin 1971, no writ); and *Cloer v. General Motors Corporation*, 395 F.Supp. 1070 (E.D.Tex.1975). The Supreme Court of Texas has not yet ruled directly on this issue.

The position of the intermediate courts in Texas does not represent the trend of the cases in other jurisdictions, nor does it reflect the wiser and more progressive approach as it appears to this writer. The generally recognized landmark case for support of the principle that privity is not required in pure economic loss cases is *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965). There, Santor brought suit against the manufacturer of a carpet which he had purchased from one of its distributors. The only contract was between Santor and the distributor, which had subsequently gone out of business. Santor sought recovery only for the loss of value of the carpeting.

After a thorough discussion of the positions of the various states and the concomitant rationale of the divergent views, the New Jersey Supreme Court held that privity was not necessary to maintain an action by a consumer against the manufacturer for redress of an economic loss. The Court restated the holdings which do not require privity for recovery in instances of personal injury and said:

> "But we see no just cause for recognition of the existence of an implied warranty of merchantability and a right to recovery for breach thereof regardless of lack of privity of the claimant in the one case [as in personal injury] and the exclusion of recovery in the other simply because loss of value of the article sold is the only damage resulting from the breach.
>
> \*     \*     \*     \*     \*     \*
>
> "From the standpoint of principle, we perceive no sound reason why the implication of reasonable fitness should be attached to the transaction and be actionable against the manufacturer where the defectively-made product has caused personal injury, and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it. In such situations considerations of justice require a court to interest itself in originating causes and to apply the principle of implied warranty on that ba-

sis, rather than to test its application by whether personal injury or simply loss of bargain resulted from the breach of the warranty. True, the rule of implied warranty had its gestative stirrings because of the greater appeal of the personal injury claim. But, once in existence, the field of operation of the remedy should not be fenced in by such a factor." *Santor v. A and M Karagheusian, Inc.*, supra at 309.

The court accepted these logical principles of equity and incorporated with them the substantive law of strict liability in tort. It again refused to accept the personal injury/economic loss dichotomy and held that only through tort liability would the burden of the injury be placed where it should be—on the maker of the product. This is because, though the breach arose initially from the sales contract, it was a " 'tortious wrong suable by a noncontracting party' ". *Santor*, supra at 312 [quoting from *Goldberg v. Kollsman Instrument Corporation*, 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81, 82 (1863)].

This position has been adopted in other jurisdictions: *Randy Knitwear, Inc. v. American Cyanamid Company*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962); *State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc.*, 252 Iowa 1289, 110 N.W.2d 449 (1961); *Cova v. Harley Davidson Motor Company*, 26 Mich.App. 602, 182 N.W.2d 800 (1970); *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177 (3d Cir. 1972); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968); *Dealers Transport Co. v. Battery Distributing Co.*, 402 S.W.2d 441 (Ky.1965); *Hiigel v. General Motors Corporation*, 544 P.2d 983 (Colo.1975); *Air Products & Chem., Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414 (1973) [applying Pennsylvania law]; *Iacono v. Anderson Concrete Corp.*, 42 Ohio St.2d 88, 326 N.E.2d 267 (1975). See also *Baughman v. Quality Mobile Homes, Inc.*, 289 So.2d 376 (La.App.1973); *Coleman v. Hertz Corp.*, 534 P.2d 940 (Okl.Ct.App.1975); *Hawkins Construction Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973). And see

generally Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)" 69 Yale L.J. 1099 (1960); Annot. 16 A.L. R.3d 683 (1967); and *Blum v. Richardson-Merrell, Inc.*, 268 F.Supp. 906 (D.Md.1965) which criticizes the harshness of the rule requiring privity.

In determining that privity is not a requirement in order for a consumer to seek damages against a manufacturer for economic loss, the cases have predicated recovery upon basically three theories:[1]

1. establishing exceptions to the general rule, such as the creation of a fictional privity based upon express and/or implied warranties. See, e. g., *Elanco Products Company v. Akin-Tunnell*, 474 S.W.2d 789 (Tex.Civ.App.—Amarillo 1971, no writ); *Ford Motor Company v. Lemieux Lumber Company*, 418 S.W.2d 909 (Tex.Civ.App.—Beaumont 1967, no writ).

2. making flat statements that no privity is required, apparently in the posture of an extension of *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967) [which itself involved personal injuries].

3. considerations of public policy—sometimes on the basis of strict liability, see, e. g., *Santor v. A and M Karagheusian, Inc.*, supra, and *Hiigel v. General Motors Corporation*, supra (544 P.2d 983); but also on the basis of an intermingling with real property concepts in concluding that a warranty is said to run with the product. See 24 Baylor L.Rev., supra at 381.

In applying the doctrine of strict liability, recent courts have done so on the basis of the Restatement of Torts, § 402A. *Hiigel v. General Motors Corporation*, supra at 989. This particular approach has been criticized by some writers as completely disregarding the law of sales. Prosser, "The Fall of the Citadel," 50 Minn.L.Rev. 791 (1969). One eminent Texas authority has expressed the opinion that the question should be concerned with sales law and the application of the Uniform Commercial Code. Keeton, "Torts," 23 Sw.L.J. 1 (1969).

In this context it is to be noted that the writers of the Texas version of the Uniform Commercial Code declined to adopt any of the alternatives which were put forth by the Code. The legislature thus enacted the following provision as to whether privity was needed within the context of the discussion before us:

"This chapter does not provide whether anyone other than a buyer may take advantage of an express or implied warranty of quality made to the buyer or whether the buyer or anyone entitled to take advantage of a warranty made to the buyer may sue a third party other than the immediate seller for deficiencies in the quality of the goods. These matters are left to the courts for their determination." Tex.Bus. & Comm.Code Ann. § 2.318 (1968).

The effect of this neutral legislative position has been interpreted differently by the Texas courts. One school of thought is that § 2.318 demonstrates an intention that the issue be decided according to traditional common law rules incorporating privity. *Eli Lilly and Company v. Casey*, 472 S.W.2d 598, 600 (Tex.Civ.App.—Eastland 1971, writ dism'd). The other view is that the recovery in such cases is to be based upon considerations of sales law separate and apart from the law of torts. *Monsanto Company v. Thrasher*, 463 S.W.2d 25, 27 (Tex.Civ. App.—Amarillo 1970, no writ). We decline to accept either rationale, and adopt the view that the legislature is of the opinion which it enunciated—its unambiguous expression of neutrality. We proceed from this position.

■ It is our opinion that the interests of equity and justice will best be served by accepting the view that privity in cases now under consideration should not be required. Matters of public policy dictate that no

---

1. For a more detailed discussion on the various theories see 24 Baylor L.Rev. 370, 380–382 (1972).

different treatment should be accorded in instances where a consumer suffers personal injury or damage to other property, and situations where the harm is the diminution of value of the product itself and the resulting economic loss. In both circumstances there is an "injury" to the public sector, whose only action in the commercial transaction is to purchase goods placed in the stream of commerce by the manufacturer. To insulate the maker of the goods under these conditions can result only by resort to reasoning which is no longer viable in our current economic practices and present sense of justice.

■ We do not base our ruling on strict liability in tort within the frame work announced by *Santor* because § 402A is specifically predicated upon "physical harm to user or consumer." Restatement (Second) of Torts, § 402A (1965). We adhere to the concept that there is an implied warranty of reasonable fitness of a product as a matter of public policy.[2] See Annot., 16 A.L. R.3d 683, 699 § 6 (1967) and the discussion and cases cited therein. This concept is not adverse to the jurisprudence of this state. The principle was applied over three decades ago with respect to contaminated food. In *Jacob E. Decker & Sons, Inc. v. Capps*, 139 Tex. 609, 164 S.W.2d 828 (1942) the Court said that a nonnegligent manufacturer who processes and sells contaminated food to a retailer for resale for human consumption is liable to the consumer for injuries sustained by him under an implied warranty imposed by operation of law as a matter of public policy, irrespective of the fact that the consumer had no contract with the original manufacturer.

That the trend of the law in this regard was to reduce the harshness of requiring privity was recognized long ago by the highest court in this State. In permitting the city of Waco to recover for the costs of installing pipe which was defective and had become worthless, the Supreme Court did not require privity between the city and the manufacturer of the pipe and stated:

"[These cases illustrate] the tendency of modern courts away from the narrow legalistic view of the necessity of formal immediate privity of contract in order to sue for breach of an express or implied warranty." *United States Pipe & Foundry Co. v. City of Waco*, 130 Tex. 126, 108 S.W.2d 432, 435 (1937).

A practical consideration also supports the position advanced by this Court today; the problem of wasteful litigation. In quoting from *Randy Knitwear, Inc. v. American Cyanamid Company*, supra (226 N.Y.S.2d 363, 181 N.E.2d 399) the Court in *Santor* restated:

"It is true that in many cases the manufacturer will ultimately be held accountable for the falsity of his representations, but only after an unduly wasteful process of litigation. Thus, if the consumer or ultimate business user sues and recovers, for breach of warranty, from his immediate seller and if the latter, in turn, sues and recovers against his supplier in recoupment of his damages and costs, eventually, after several separate actions by those in the chain of distribution, the manufacturer may finally be obliged 'to shoulder the responsibility which should have been his in the first instance.' (*Hamon v. Digliani*, 148 Conn. 710, 717, 174 A.2d 294, 297 . . .)." *Santor v. A and M Karagheusian, Inc.*, supra (207 A.2d at 310).

The pursuit of such wasteful litigation which is often inadequate should not be required in this State.

■ This jurisdiction should refrain from the "narrow legalistic view" that privity is necessary before the public may recover for damages suffered when the product diminishes in value and/or becomes worthless because of the defective workmanship of the manufacturer. Defendant's Point of Error No. 1 is overruled as being without merit.

2. This concept was recognized by *Santor*. *Santor v. A and M Karagheusian, Inc.*, supra (207 A.2d at 310).

By Points of Error Nos. 8–12, defendant complains that there is insufficient evidence to support the finding that the mobile home was constructed with defective workmanship; and that there is insufficient evidence to support the finding that the difference in the reasonable market value at the time of purchase and the original contract price was $8,750.

The evidence shows that the roof had been spliced and the resulting leaks had caused damages to the bathroom and one of the bedrooms; that the floor seams had begun to separate and there were gaps between some of the floors; and that there were no floor joists for support; and that when any of the floors got wet, there was no support at all. The plaintiffs' expert further stated that various doors and windows were not properly installed and leaked; and that some of the kitchen cabinets were pulling away from the walls and that some of the countertops were bowed. It was his opinion that the value of the mobile home in its present condition was worth approximately $1,000.

The defendant attempted to show that the cost of repairs would not amount to $1,000 but has not contested the fact that the above defects existed. It was defendant's position that the various leaks from pipes and faucets could have been caused by the transportation of the home and that the defendant used the same basic materials as other manufacturers of mobile homes and adequately tested the same. The home was originally purchased for $22,168.75, including taxes, finance charges, license, and insurance.

■ There was sufficient evidence that the home was constructed in an unworkmanship-like manner and that the value of the home was considerably below the original purchase price. Points of Error Nos. 8–12 are without merit and are overruled.

We find no merit to defendant's remaining points, and they are likewise overruled. The judgment of the trial court is affirmed.

AFFIRMED.

KEITH, Justice (dissenting).

The majority, employing a variety of the deep pocket theory, fixes liability upon a manufacturer of a mobile home when there is no privity of contract between the parties and no injury to person or property. The French jurists speak of this deep pocket theory as *"le risgue créé."* [1]

I find it extremely difficult to generate sympathy for the manufacturer of a defective mobile home relying wholly upon the doctrine of privity as its defense. Yet, I decline to join in this departure from solidly established Texas precedent simply because our plaintiff has made a bad deal on the purchase of a mobile home. This is another example of "hard cases 'are apt to introduce bad law.' " [2]

In my approach to this dissent, I invoke the language used by Justice Oran M. Roberts in *Duncan v. Magette*, 25 Tex. 245, 253 (1860):

"The act of moulding justice into a system of rules detracts from its capacity of abstract adaptation in each particular case; and the rules of law, when applied to each case, are most usually but an approximation to justice. Still, mankind have generally thought it better to have their rights determine by such a system of rules, than by the sense of abstract justice, as determined by any one man, or set of men, whose duty it may have been to adjudge them.

\*   \*   \*   \*   \*   \*

*Winterbottom v. Wright*, supra, was the case which established the privity rule; and, at least one court has suggested that the rule was based on dictum. *Anderson v. Linton*, 178 F.2d 304, 307 (7th Cir. 1949).

---

1. Cf. S. Donnelly, "After the Fall of the Citadel," 19 Syracuse Law Rev. 1, 31 (1967).

2. See *United States v. Mitchell*, 403 U.S. 190, 205, 91 S.Ct. 1763, 29 L.Ed.2d 406, 417, fn. 6 (1971), attributing the observation to Baron Rolfe in *Winterbottom v. Wright*, 10 M & W 109, 116, 152 Eng.Rep. 402, 406 (1842).

"To follow the dictates of justice, when in harmony with the law, must be a pleasure; but to follow the rules of law, in their true spirit, to whatever consequences they may lead, is a duty. *This applies as well to rules establishing remedies, as to those establishing rights.*"

The weakness of the majority opinion is exemplified by the confession that it cannot follow the *Santor* decision from New Jersey; it cannot follow § 402A of the Restatement of Torts (Second) because the latter is "specifically predicated upon 'physical harm to user or consumer.'" Then reference is made to implied warranty of reasonable fitness of a product as a matter of public policy, citing *Jacob E. Decker & Sons, Inc. v. Capps,* 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942).

In the article entitled "An Overview of Strict Tort Liability in Texas," J. Sales, 11 Hous.L.Rev. 1043 (1974), the author says: "The court's conclusion [in *Decker*] was premised squarely on the 'broad principle of the public policy to protect human health and life.'" The inside quotation is to be found in the reported opinion, 164 S.W.2d 829. *Decker* lends no support to the deep pocket theory now embraced by the majority; thus, the majority cannot follow *Decker* either.

The landmark decision wherein Texas adopted the provisions of the Restatement of Torts (Second), § 402A, is *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex. 1967).[3] In so doing, the Court made it clear that the rule applied only to personal injuries, saying: "We are further of the opinion that as a logical proposition, the rule stated in *Decker* should be held applicable to defective products which cause *physical harm to persons.*" (emphasis supplied)

The Texas courts, despite the obvious trend toward expansion of strict liability as a ground of recovery, almost without exception have declined to expand the doctrine to permit recovery for consequential losses such as loss of the use of the product, loss of bargain, or loss of profits. These courts have held that where there is no injury to person or property—as in the case at bar—an action for recovery of economic loss is contractual in nature and thus requires privity of contract. 11 Hous.L.Rev., supra, at 1061.

The decisions of the Texas Courts are contrary to the holding of the majority. Judge Steger in *Cloer v. General Motors Corporation,* 395 F.Supp. 1070, 1071–1072 (E.D.Tex.1975), synthesized the holdings of the Texas courts in this manner:

"The Plaintiff's suit is for economic loss only, and does not involve harm to the person or property of another. Therefore, this suit is to be governed by pure contract law. *Pioneer Hi-Bred International, Inc. v. Talley,* 493 S.W.2d 602 (Tex.Civ.App.—Amarillo, 1973); *Thermal Supply of Texas, Inc. v. Asel,* 468 S.W.2d 927 (Tex.Civ.App.—Austin 1971).

"Under the contract law of Texas, to recover for a breach of express and implied warranties, it is essential that there be privity of contract between the Plaintiff and the Defendant. *Foremost Mobile Homes Mfg. Corp. v. Steele,* 506 S.W.2d 646, 649 (Tex.Civ.App.—Ft. Worth, 1974); *Veretto v. Eli Lilly and Company,* 369 F.Supp. 1254 (N.D.Tex.1974); *Pioneer Hi-Bred International, Inc. v. Talley,* supra at 608; *Eli Lilly and Company v. Casey,* 472 S.W.2d 598 (Tex.Civ.App.—Eastland, 1971, App. Dism'd); *Melody Home Manufacturing Company v. Morrison,* 455 S.W.2d 825 (Tex.Civ.App.—Houston (1st Dist.), 1970); Contra, *Ford Motor Company v. Lemieux Lumber Company,* 418 S.W.2d 909 (Tex.Civ.App.—Beaumont, 1967). The Court observes that the *Lemieux Lumber* case was a tort case and did not involve purely contract law. Therefore, the broad statements made by the Court therein concerning privity of contract are inapplicable to Mr. Cloer's cause of action, which is based solely on con-

---

**3.** For a detailed chronicle of the development of § 402A, see R. Ray, "Products Liability—A Symposium," 19 Sw.L.J. 1 (1965).

tract law. See *Foremost Mobile Homes Mfg. Corp. v. Steele,* supra at 648–649." [4]

Chief Justice McCloud in *Eli Lilly and Company v. Casey,* 472 S.W.2d 598, 599 (Tex.Civ.App.—Eastland 1971, writ dism'd), quoted extensively from *Thermal Supply of Texas, Inc. v. Asel,* 468 S.W.2d 927 (Tex.Civ. App.—Austin 1971, no writ). I adopt this rationale as a part of this dissenting opinion. Justice Bateman in *Emmons v. Durable Mobile Homes, Inc.,* 521 S.W.2d 153, 154 (Tex.Civ.App.—Dallas 1974, no writ),[5] denied the purchaser a recovery from the manufacturer of the mobile home because of a lack of privity.

For further discussion, see: R. Weintraub, "Warranties Under the UCC," 53 Tex.L.Rev. 60 (1974), and *Salmon Rivers Sportsman Camps, Inc. v. Cessna Air. Co.,* 97 Idaho 348, 544 P.2d 306, 312 (1975).

If my position needs further strengthening, I need but quote the basic rationale of Chief Justice Traynor speaking for the California Supreme Court in the case of *Seely v. White Motor Co.,* 63 Cal.2d 209, 45 Cal. Rptr. 17, 21, 403 P.2d 145, 149 (1965):

> "The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act or of the Uniform Commercial Code but, rather, to govern the distinct problem of physical injuries." [6]

The position which I have taken in this dissent is in strict harmony with all of the Texas decisions (with the possible exception of *Lemieux,* supra); and, it is also in accord with some of the leading scholars in the field. See, e. g., W. Prosser, "Fall of the Citadel (Strict Liability to the Consumer)," 50 Minn.L.Rev. 791, 821–822 (1966). It also "comports with the prevailing view in other jurisdictions." 11 Hous.L.Rev., supra, at 1062.

Under the law as it existed in Texas before today's decision, the appellant was entitled to a reversal of the trial court's judgment and a rendition of judgment that the plaintiff take nothing. Here, as in *Foremost Mobile Homes Mfg. Corp. v. Steele,* 506 S.W.2d 646, 647 (Tex.Civ.App.— Fort Worth 1974, no writ): "The mobile home was never considered to be useless for the purpose for which it was purchased, but rather was considered to be less useful by reason of the defects." Indeed, the plaintiffs in our case are still living in the mobile home (or at least they were at the time of the trial of the case). Thus, this case, like *Steele,* supra, is a "case of pure contract law involving mere economic loss" and plaintiffs may not prevail. Since I would reverse and render judgment for the appellant, I dissent from an affirmation.

---

**4.** I, too, disagree with the "broad statements" found in *Ford Motor Company v. Lemieux Lumber Company,* 418 S.W.2d 909. See my concurring opinion in *John Deere Company of Kansas City v. Tenberg,* 445 S.W.2d 40, 47 (Tex.Civ.App.—Beaumont 1969, no writ). I was not a member of this court when *Lemieux* was decided.

**5.** The writ history of *Emmons* is uncertain. Sheppard's Texas Citations, Vol. 69, No. 2, p. 204 (May 1976), gives the notation "RNRE", indicating that the writ was refused, no reversible error. The writ of error table appearing in the pink pages of the current Southwestern Reporter advance sheets indicates that a writ of error was not sought in the case.

**6.** This is the same Justice Traynor who was the author of the decision in *Greenman v. Yuba Power Prods., Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). In speaking of this opinion in *Greenman,* Dean Prosser has said: "Justice Traynor's opinion is obviously destined to be, along with the *Henningsen* case, one of the twin landmarks among these decisions." W. Prosser, "The Fall of the Citadel (Strict Liability to the Consumer)," 50 Minn.L. Rev. 791, 803 (1966).