**KEYSTONE AERONAUTICS CORPORATION, a corporation, Appellant,**

v.

**R. J. ENSTROM CORPORATION,**
a corporation

v.

**FOUNDRY ALLIED INDUSTRIES, INC.,**
a corporation.

No. 73–1915.

United States Court of Appeals,
Third Circuit.

Argued Feb. 27, 1974.

Decided June 26, 1974.

Kenneth S. Robb, Raymond H. Conaway, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellant.

Gilbert J. Helwig, John T. Tierney, III, Alan G. Keith, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee, R. J. Enstrom Corp.

Before HUNTER and WEIS, Circuit Judges and BECKER, District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

When a purchaser claims damages from a seller because of a defective product, there is often a need to evaluate the proper roles of Section 402A of the Restatement of Torts 2d and the Uniform Commercial Code. This appeal presents such an occasion. Specifically, we are confronted with the question of whether a seller may disclaim responsibility for any potential liability under § 402A, and, if so, what conditions must be met.

This is a diversity case, and we must be guided by the Erie light of Pennsylvania law, an uncertain illumination at best since the appellate courts of that state have not yet addressed themselves to the issue. We are mindful that our assigned role is to predict and not to form state law and so will utilize those guide posts which are available.

The factual background arises from three transactions in which the plaintiff Keystone purchased used helicopters from the defendant, R. J. Enstrom Corporation, which manufactured them. The first sale of No. 24 occurred on December 11, 1969 and was accompanied by a printed "Purchase Agreement" prepared by the defendant manufacturer. On the back of this document appeared a "Warranty" purporting to limit the obligation of the manufacturer to replacement of defective parts occurring within six months after delivery or 400 hours of operation, whichever would first occur. This undertaking was stated to be in lieu of all other warranties and "all

other obligations and liability, direct or consequential . . ."[1]

The second purchase occurred on March 27, 1970 when two demonstrators, Nos. 46 and 34, were obtained by the plaintiff. On this occasion, there was added to the front page of the purchase agreement form the following provision:

"Customer takes 'as is' without warranty of any kind except Enstrom will convey good title."

On the back of the form, the standard warranty provision was "X'ed" out, and the following language inserted:

## "WARRANTY EXCLUSIONS

"The R. J. Enstrom Corporation will be held harmless of any liability in connection with this sale.

Sale of these helicopters is unconditional and no warranty of any kind is made or implied."

On September 23, 1970, No. 46 crash-landed while being flown by a Keystone pilot. There was no personal injury, but the aircraft was damaged substantially.

At the request of the Federal Aviation Administration, Keystone grounded Nos. 24 and 34, the remaining undamaged craft, until the cause of the crash could be determined and necessary corrections made, if needed.

Keystone brought suit in the district court for damages, alleging liability under theories of negligence, strict liability under § 402A, and breach of warranty. The last ground was abandoned by the plaintiff in the trial court, and we do not consider it here.

The district court granted summary judgment for the defendant, holding that in the commercial setting involved here the provisions of § 402A could be waived by the parties and that the language in the purchase agreement was effective both as to that cause of action and negligence as well.

While Pennsylvania has adopted § 402A,[2] its courts have not yet had the opportunity to pass upon comment m which reads, inter alia:

"The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated merely as one of strict liability in tort."

The Supreme Court of Pennsylvania has tended to adopt other comments to this section of the Restatement, and we expect similar consideration of comment m. However, the interpretation of the district court is not necessarily in conflict.

In essence, the district court reasoned that while sound public policy would prohibit disclaimer of the benefits of § 402A in the "garden variety" consumer situation, the same result need not follow where the sale was a pure commercial transaction between two knowledge-

---

1. The warranty period as to No. 24 had expired before the critical events in this suit occurred.

2. Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966).

able corporations which have consciously negotiated terms and price, and only property damage is at issue.

■ The trial court held that freedom of contract should be permitted so that a corporate purchaser may exercise its business judgment to forego claims for liability against the seller in exchange for a lower price. There is much to be said for this approach and its recognition that relief from restrictions in a commercial context is not inconsistent with the purposes of § 402A, i. e., protection of the average consumer who is not really in a position to bargain effectively or intelligently.[3]

If a disclaimer on the label of a product or in a printed form sales contract would be effective to limit liability under § 402A, then obviously sellers would utilize such devices to nullify their responsibility. And it is significant that the application of § 402A is limited to a " . . . product in a defective condition unreasonably dangerous . . . " A social policy aimed at protecting the average consumer by prohibiting blanket immunization of a manufacturer or seller through the use of standardized disclaimers engenders little resistance. But when the setting is changed and the buyer and seller are both business entities, in a position where there may be effective and fair bargaining, the social policy loses its *raison d'etre*.[4] The transaction then tends to be more influenced by gravitational pull of the Uniform Commercial Code than by the consumer oriented § 402A.

■ Since the Code is tolerant of disclaimers and limitation clauses within certain defined limits,[5] that same philosophy would be equally approving of a negotiated waiver of § 402A. Such a limitation on comment m would avoid the not unfamiliar result of "overkill" when a legal principle completely valid in its original context is extended so far that the mischief caused may be equal to the original disorder sought to be remedied.

We have no reason to believe that the courts of Pennsylvania would not come to the same conclusion as we do. Exculpatory clauses to relieve a person of his own negligence have been enforced in less favorable circumstances, and it would appear that the advantages of freedom of contract would overcome any inclination to adopt a narrow and restrictive interpretation of comment m.

■ We conclude therefore that Pennsylvania law does permit a freely negotiated and clearly expressed waiver of § 402A between business entities of relatively equal bargaining strength. Nevertheless, we must reverse the entry of summary judgment here because the language used in the sales agreement, the only evidence of the disclaimer before the district court, fails to show a clearly expressed waiver. While Pennsylvania does give effect to exculpatory clauses against liability for negligence, stringent standards have been imposed upon their recognition. *See* Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n, 423 Pa. 288, 224 A.2d 620 (1966); Dilks v. Flohr Chevro-

---

3. As to the advantages of disclaimers, *see* Donnelly, After the Fall of the Citadel: Exploitation of the Victory or Consideration of All Interests?, 19 Syracuse L.Rev. 1 (1967). *See also* Speidel, Products Liability, Economic Loss and the UCC, 40 Tenn.L. Rev. 309 (1973). *Cf.* Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791 (1966).

4. As aptly noted in 2 Boston College Industrial & Commercial L.Rev. 133, 138 (1960), "A holding based fundamentally on a theory of

offering protection where such protection is needed; i. e., to the disorganized and dependent consumer in the automobile purchase transaction should not be indiscriminately extended to include technically proficient industrial purchasers or others in relatively equal bargaining position vis-a-vis the seller. Thus, in a wide area of our economy the doctrine of freedom of contract would remain functionally and economically sound."

5. *See* UCC 2–316, 2–719.

let, Inc., 411 Pa. 425, 192 A.2d 682 (1963). Equally demanding requirements are appropriate when § 402A is under consideration. The defendant claims that both negligence and § 402A were comprehended by the immunizing language and we will apply the same criteria to them.

■ .In Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n, *supra,* the Pennsylvania Supreme Court set out four prerequisites which must be met .before an exculpatory claim will be effective:

1. Such clauses must be strictly construed;

2. With every intendment against the party who seeks immunity from liability;

3. The contract must spell out the intention of the parties with the greatest of particularity; and

4. The burden is upon the party asserting the immunity.[6]

In reviewing Pennsylvania law on the point, this court in Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205 (3d Cir. 1970), said:

"  .   .   .   the provisions and terms of the contract [must] clearly and unequivocally spell out the intent to grant such immunity and relief from liability."

As the court pointed out in *Neville, supra,* and as is true in this case, the agreement does not contain the word "negligence" or others of similar import. The exculpatory clause is no more definite than that found in *Greenville, supra.*

■ Under Pennsylvania law, a limitation or exclusion of warranty does not, in and of itself, work an absolution of negligence.[7] Therefore, to the extent that the language in the purchase agreement purports to release liability for breach of warranty, it would not be effective as to claims of negligence or its tort brother, strict liability. Moreover, the clause, "The R. J. Enstrom Corporation will be held harmless of any liability in connection with this sale," is inadequate to express the clear and unequivocal intent necessary to exculpate the defendant from negligence or strict liability claims.

■ A review of the record shows that the district court was called upon to consider only the phraseology of the purchase agreement itself. No discovery was had, nor were there any affidavits filed to establish whether the "purchase agreement" was only a part of a more comprehensive contract. Furthermore, no request was ever made to the district judge that testimony be taken .to resolve the meaning of "  .   .   .   held harmless of any liability in connection with this sale  .  .  ." as found in the agreement.

Since the entry of summary judgment was error, the case will be remanded. We do so without prejudice to the rights of the parties to introduce further testimony or documentation, if such be available, after due consideration of the provisions of the parol evidence rule.

■ When language used is unclear and ambiguous, evidence of attendant circumstances may enable the court to determine what the parties intended by a writing. In re Plasterer's Estate, 413 Pa. 513, 198 A.2d 525 (1964). Similarly, parol evidence is admissible to show that the writing in question was not intended to and did not properly state the entire agreement between the parties. Dunn v. Orloff, 420 Pa. 492, 218 A.2d 314 (1966).

---

6; The lease between the parties in the *Employers* case provided that the "[lessor] shall not be responsible  .  .  .  for any damages occurring to the property of [lessee]." The court refused to consider this as exculpatory because the cause of the damage had its inception before the lease was signed.

7. Shafer v. Reo Motors, 205 F.2d 685 (3d Cir. 1953), relied upon by the defendant is *not to the contrary.* There, the court noted that the scope of the exculpatory clause in the warranty was an issue of fact not raised below and hence not considered on appeal.

If there is no further testimony which can be added or if it fails to give the agreement the explicitness required by the decisions of the Pennsylvania appellate courts, then the case must proceed to disposition on the merits of the negligence and § 402A claims.[8]

The judgment of the district court will be reversed, and the case will be remanded.

8. We do not think the record adequate to support any finding of assumption of risk on the part of the plaintiff simply by virtue of having purchased a demonstrator model. There was not sufficient factual data presented to the court below for a ruling on this defense.

There are a variety of other problems which the district court may encounter should the case move beyond the exculpation issue—*e. g.*, the conflict between the theories expressed in Santor v. A and M Kar-agheusian, 44 N.J. 52, 207 A.2d 305 (1965), and Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). *See also* Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848 (1968), and. the concurring opinion of Justice Jones in Miller v. Preitz, 422 Pa. 383, 221 A.2d 320, 328 (1966). For a further exposition, *see* Murray, Pennsylvania Products Liability: A Clarification of the Search for a Clear and Understandable Rule, 33 U.Pitt.L.Rev. 391 (1972), Prosser, *supra*, and Speidel, *supra*.