**MID CONTINENT AIRCRAFT CORPORATION, Appellant,**

v.

**CURRY COUNTY SPRAYING SERVICE, INC., et al., Appellees.**

No. 8772.

Court of Civil Appeals of Texas, Amarillo.

June 30, 1977.

Rehearing Denied July 25, 1977.

Underwood, Wilson, Sutton, Berry, Stein & Johnson (H. C. Pipkin), Amarillo, for appellant.

Aldridge, Harding, Aycock & Actkinson (Johnny Actkinson), Farwell, for appellees.

REYNOLDS, Justice.

In the buyer's action to recover from the seller damages to a used aircraft and the resulting economic loss caused by a defect in the aircraft engine which rendered the aircraft an unreasonably dangerous product, the trial court imposed strict liability in allowing recovery against the defense that the used aircraft was bought subject to the terms and conditions of an "as is" sale. While the "as is" sale excluded any liability under a contractual warranty, it did not eliminate the strict liability for physical harm imposed by tort law. Affirmed.

The material facts are established by the undisputed evidence and the trial court's unchallenged findings of fact. They are that Bobby Shivers, d/b/a Shivers Flying Service in Vernon, Texas, acquired a 1971 single engine Piper Pawnee aircraft, designed for agricultural work, in a wrecked condition. Repair of aircraft is regulated by the Federal Aeronautics Administration, and no one may perform aircraft repairs unless rated and licensed to do so by the FAA. Repair work on an airframe, such as wings and fuselage, is authorized by one license, and another license is required for authorized mechanical work on the engine of an aircraft. A separate log book reflecting each type of repairs is required to be maintained with the aircraft.

Shivers, licensed by the FAA to perform only airframe work, repaired the airframe and so certified in the airframe log book. The engine repair was contracted to Robert D. Hawkins, an FAA licensed engine mechanic maintaining his shop as Hawkins Aircraft at Quanah, Texas. The engine was removed and subjected to a major overhaul by Hawkins. After Hawkins reinstalled the engine and performed a test flight, he certified the engine overhaul in the engine log book.

Shivers advertised the repaired aircraft for sale. He sold it "as is" to Mid Continent Aircraft Corporation, a Missouri corporation, and the aircraft was flown from Vernon to Mid Continent's airfield at Hayti, Missouri. No one employed by Mid Continent was licensed to perform engine work.

By inquiring about Shivers' advertisement, personnel of Curry County Spraying Service, Inc., a New Mexico corporation, learned that the aircraft had been sold to Mid Continent. Three corporate officers of, and a pilot employed by, the spraying service went to Missouri to inspect the aircraft. The only representations made by Mid Continent were that the aircraft was purchased from Shivers, that Mid Continent had not performed any work on the engine, and that Mid Continent was selling the aircraft in the same condition in which it was purchased from Shivers.

After a review of the aircraft's log books, a telephone consultation with Shivers, and a test flight by their pilot, the officers of the spraying service bought the aircraft for the corporation. The sales order was executed by the spraying service's vice-president, and immediately over his signature were these words:

Enter an order for the airplane described above, subject to the terms and conditions of an "as is" sale.

The aircraft was flown by the spraying service's pilot to its airfield at Clovis, New Mexico, and thereafter used in agricultural spray work. Some twenty-one days and thirty hours of engine time after purchase and while a field in Parmer County, Texas, was being sprayed, the engine quit in flight. The pilot landed the aircraft on a rough county road, damaging the fuselage and wings. No personal injury or damage to other property was sustained.

An FAA licensed aircraft and engine mechanic employed by Hutcherson Air Service in Plainview, Texas, inspected the engine. He concluded that the cause of engine failure was the absence of a small safety lock plate on a bolt that attaches a gear to the crankshaft of the engine. The absence of the lock plate permitted the gear bolt to loosen, allowing the crankshaft gear to back out of place about a quarter of an inch and shear the dowel pin in the timer. This had the same effect as turning off the ignition switch on the aircraft.

Curry County Spraying Service, Inc., instituted this suit against Mid Continent, Shivers and Hawkins to recover for the physical damage to the aircraft and for its loss of use. Its causes of action were grounded on breach of implied warranties of merchantability and fitness of the aircraft, negligence in failing to discover and correct or warn of the defect in the engine, and strict liability in tort for an unreasonably dangerous defect in the engine. Cravens, Dargan & Company, the insurer of

the aircraft for the spraying service, entered its appearance as a party plaintiff. Mid Continent cross-actioned to recover from Shivers and Hawkins any damages for which it might be adjudged liable to the spraying service. Shivers answered both actions, but Hawkins, so far as the record reveals, filed no answer.

Upon motion by Mid Continent and Shivers, the cross action was severed and, thereafter, the main cause was heard by the court without the intervention of a jury. The court decreed that Curry County Spraying Service, Inc., and Cravens, Dargan & Company recover jointly and severally from Mid Continent Aircraft Corporation, Robert D. Hawkins, d/b/a Hawkins Aircraft, and Bobby Shivers, d/b/a Shivers Flying Service, the sum of $8,348.49—composed of $4,658.49 as the reasonable cost of repairs, and $3,690 for loss of use of the damaged aircraft as measured by the rental of a replacement aircraft during repairs—with interest and costs.

Among the court's numbered findings of fact are these summarized facts:

1. Hawkins failed to install the crankshaft gear bolt lock plate, which was negligence proximately causing the crash and resulting damages;

2. The absence of a crankshaft gear bolt lock plate rendered the aircraft an unreasonably dangerous product at the time of its purchase;

3. Both Shivers and Mid Continent were, at the times material, engaged in the business of selling airplanes;

4. Shivers and Mid Continent knew at the time each sold the aircraft that it would reach the user and ultimate consumer in the condition in which it was sold;

5. The defect rendering the aircraft unreasonably dangerous did not arise from normal use of the aircraft;

6. Neither Shivers nor Mid Continent made any express warranty of suitability, fitness, freedom from defects, or of any kind, but sold the aircraft "as is"; and

7. Neither Shivers nor Mid Continent knew, or was negligent in failing to ascertain or warn, that the aircraft was unreasonably dangerous when sold.

By the court's legal conclusions, Hawkins was liable in tort for his negligence and Shivers and Mid Continent were liable under the tort rule of strict liability.

Only Mid Continent has appealed. In contending that the sale contract absolved it of all liability and that the Court erred in imposing strict liability in tort, Mid Continent does not challenge either the measure or the amount of damages awarded.

■ The questions, then, are: (1) whether the rule of strict liability applies when a defect rendering a product unreasonably dangerous to a user or consumer or to his property causes only physical harm to the product itself; and (2) if so, whether an "as is" sale sanctioned by the Texas Uniform Commercial Code (1968), V.T.C.A., Bus. & C. § 2.316(c)(1), absolves the seller of that strict liability. We answer the first question in the affirmative, and the second in the negative.

Prior to legislative embracement of the Uniform Commercial Code, Texas historically followed the common law rule that, absent applicable statutory provisions, implied warranties did not arise in the sale of secondhand goods purchased with knowledge of their used condition. 26 Baylor L.Rev. 630, 634 (1974). The legislature reenacted the 1965 Uniform Commercial Code as a part of the Texas Business and Commerce Code (1968) to take effect on 1 September 1967. The Code provisions do not distinguish between new and used products. Created by § 2.314 and § 2.315 of the Code are implied warranties that the goods sold shall be merchantable and are, under certain circumstances, fit for the particular purpose required, unless the implied warranties are excluded or modified under § 2.316. By § 2.316(c)(1) it is provided that:

unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

If applicable to a given sales transaction, this legislation must be followed, and it may not be changed, by the courts.

Meanwhile, the Texas common law, which the courts may change, underwent a gradualistic and cautious approach to imposing strict liability until the decision in *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967). That decision committed the Texas courts "to the rule of strict liability expressed in Section 402A of The American Law Institute's Restatement of the Law of Torts (2d Ed.) as applicable to all persons engaged in the business of selling who sell a product in a defective condition which renders it unreasonably dangerous to a user or consumer or to his property." *Pittsburg Coca-Cola Bottling Works v. Ponder,* 443 S.W.2d 546, 548 (Tex. 1969). Specifically, the rule is stated thusly:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

By authority of this rule, the manufacturer of an unreasonably dangerous product purchased new, *General Motors Corporation v. Hopkins,* 548 S.W.2d 344, 351 (Tex.1977), or used, *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970),

the dealer in a new product, *Henderson v. Ford Motor Company,* 519 S.W.2d 87, 92 (Tex.1974), the seller of a used product, *Hovenden v. Tenbush,* 529 S.W.2d 302, 310 (Tex.Civ.App.—San Antonio 1975, no writ); *McLain v. Hodge,* 474 S.W.2d 772, 774 (Tex. Civ.App.—Waco 1971, writ ref'd n. r. e.), and the lessor of a (presumably used) product, *Rourke v. Garza,* 530 S.W.2d 794, 800 (Tex.1975), are subject to strict liability if the unreasonably dangerous product causes harm to the user, *Rourke v. Garza, supra,* at 798, to non-users and non-consumers, *Darryl v. Ford Motor Company,* 440 S.W.2d 630, 633 (Tex.1969), to other property of the ultimate consumer, *O. M. Franklin Serum Company v. C. A. Hoover & Son,* 418 S.W.2d 482 (Tex.1967), and, at least tacitly, to a finished property into which a defective used product had been incorporated. *Hovenden v. Tenbush, supra,* at 306. At the same time, all of the Texas courts addressing the subject, save one, have held that privity of contract is required before one may recover for an economic loss—e. g., loss of use of the product, loss of bargain— and, therefore, the law of sales rather than the rule of strict liability applies. See, e. g., *Pioneer Hi-Bred International, Inc. v. Talley,* 493 S.W.2d 602, 607 (Tex.Civ.App.— Amarillo 1973, no writ). But, *cf. Nobility Homes of Texas, Inc. v. Shivers,* 539 S.W.2d 190 (Tex.Civ.App.—Beaumont 1976, writ granted) for the majority holding that privity of contract is not required to enable one to recover pure economic damages, which, as the dissent illustrates at 195–197, is contrary to solidly established Texas precedent.

Despite the decadal co-existence of these contract and tort principles pertaining to sales, our attention has not been directed to, nor have we discovered, any case in which a Texas court has squarely confronted the issue of an express disclaimer of all warranties vis-a-vis strict liability in the sale of a defective product, new or used, where the defect caused only physical harm to the product itself with or without a concurring

economic loss. Although the cases cited by the litigants speak to one or both of the principles, none of them faces the issue in the case before us. While it would not be beneficial to lengthen this opinion to demonstrate that none of the cases is dispositive of the issue, it is appropriate to exemplify their inapplicability.

Mid Continent urges the decisiveness of *Chaq Oil Company v. Gardner Machinery Company*, 500 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ), and *Nobility Homes of Texas, Inc. v. Shivers, supra.* The gist of *Chaq* was whether the buyer could recover from the seller the purchase price of and the cost of repairs to a used crawler-tractor on the theory of breach of implied warranties, and the matter of strict liability was not mentioned. In *Nobility Homes,* the manufacturer of a mobile home was held liable to the purchaser from a non-agent third party for a pure economic loss on the strict liability concept of an implied warranty of reasonable fitness as a matter of public policy. Applicability of Restatement (Second) of Torts § 402A was specifically disclaimed, 539 S.W.2d 194, and the Uniform Commercial Code was not addressed. As noted, the application for writ of error was granted, and the cause was submitted to the Supreme Court on 12 January 1977. 20 Sup. Ct.Jour. 140 (January 15, 1977).

The spraying service and its insurer rely on *Tide Products, Inc. v. Browning,* 493 S.W.2d 654 (Tex.Civ.App.—Amarillo 1973, no writ), and *Hovenden v. Tenbush, supra. Browning,* a venue proceeding, merely stated that within the proof of the venue facts was sufficient evidence that the chemicals applied could have caused damage to the peanut crop (other property). *Hovenden* was a buyer's action to recover damages from a seller of secondhand bricks for deterioration of a building's walls constructed with the allegedly defective bricks. In reversing a summary judgment for the seller, the court's holding, contrary to the seller's contention, was that Restatement (Second) of Torts § 402A was applicable to dealers in used products. Pointedly, the court stated

that since Texas had adopted the Uniform Commercial Code after the buyer's cause of action arose, there need not be considered the question whether the implied warranty provisions of the Code, absent negligence or an express warranty, had the effect of establishing an action in implied warranty as the sole remedy. 529 S.W.2d 309.

Evident from the development of the law is that the Uniform Commercial Code (contract) law and the Restatement (Second) of Torts § 402A (tort) rule of strict liability co-exist in Texas to serve different functions. Code law, whose statutory language makes no reference to tort law in connection with products liability, concerns itself with the quality of the product by establishing standards of merchantability and fitness for a particular purpose. The rule announced by § 402A, accompanied by comment m stating that the rule is not governed by the provisions of the Uniform Commercial Code, concerns itself with safety standards by imposing strict liability upon one who sells an unreasonably dangerous product which causes physical harm. The considerations supporting either of the principles are not affected by the considerations underlying the other, and the standards of quality of a product, with the attendant risk of the bargain, are entirely distinct from its standards of safety, with a possible unreasonable risk of harm. It follows that a violation of the standards of safety which results in physical harm to the unreasonably dangerous product itself subjects the seller to the tort rule of strict liability. This rule has been proclaimed in other jurisdictions. See, e. g., *Morrow v. Caloric Appliance Corporation,* 372 S.W.2d 41, 55 (Mo.1963); *Santor v. A and M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305, 312 (1965); *Seely v. White Motor Company,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 152 (1965).

██ Given the applicability of these principles to a used product such as the one

in the case at bar, the Code permits a disclaimer or exclusion of all implied warranties of merchantability and fitness for a particular purpose, particularly by an "as is" sale, and we see no sound reason why knowledgeable parties of equal bargaining strength should not also be free, in negotiating the sale and purchase of a secondhand product, to define their scope of responsibility for physical harm to the product itself. Agreements between the buyer and the seller to limit or exonerate the seller's tort liability for product defects are accorded validity elsewhere. See, e. g., *Delta Air Lines, Inc. v. McDonnell Douglas Corporation,* 503 F.2d 239 (5th Cir. 1974) (applying California state law and Georgia conflicts rule); *K-Lines, Inc. v. Roberts Motor Company,* 541 P.2d 1378 (Or.1975).

Conformably, it long has been the general rule in Texas that parties have the right to contract with respect to property as they see fit so long as their contract is neither illegal nor against public policy. *Curlee v. Walker,* 112 Tex. 40, 244 S.W. 497, 498 (1922). As a reasonable corollary, the parties may limit, between themselves, their liability to that expressed in their contract. Yet, when the parties have entered into a valid contract, they are bound by its provisions, *Pyle v. Eastern Seed Co.,* 145 Tex. 385, 198 S.W.2d 562, 563 (1946), and the court is not at liberty to construe their agreement any differently. *General American Indemnity Company v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960).

■ Before us is a commercial transaction involving the sale and purchase of a used aircraft between two business entities on an equal bargaining plane. Both possessed the same knowledge, received from the same sources, and neither knew or had the qualifications to discover the defect in the engine rendering the aircraft an unreasonably dangerous product which later caused physical harm to the aircraft itself. Each was free to enter into or decline to consummate the transaction. In this setting, an "as is" sale of the used product was negotiated and consummated. No express

warranties were given and the sale agreement employed the "as is" language of the Code to exclude any implied warranty liability, but no mention was made of the scope of responsibility imposed on the seller by the § 402A rule of strict liability. Under these circumstances, we agree with the trial court's implied conclusion and the holding in *McMillen Feeds, Inc. of Texas v. Harlow,* 405 S.W.2d 123, 137 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.), that a waiver or disclaimer of an implied warranty does not eliminate the strict liability imposed by law. Therefore, the "as is" sale agreement exonerated Mid Continent from any liability under contract law, but it contained no language that would absolve Mid Continent of the strict liability imposed for physical harm by tort law.

Considering these same legal principles under somewhat similar factual situations, two federal courts arrived at conclusions consistent with ours. The conclusions in *Keystone Aeronautics Corporation v. R. J. Enstrom Corporation,* 499 F.2d 146 (3rd Cir. 1974), were reached under Pennsylvania law, and *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (10th Cir. 1974), invoked Oklahoma law for its conclusions. Both Pennsylvania and Oklahoma have enacted the Uniform Commercial Code and have adopted the § 402A rule of strict liability in tort.

The factual situation in *Keystone* was that Keystone purchased used helicopters from Enstrom. One of the helicopters was purchased " 'as is' without warranty of any kind except Enstrom will convey good title," and with a further warranty exclusion that Enstrom "will be held harmless of any liability in connection with this sale." When the helicopter crash landed, it was damaged substantially, but there was no personal injury.

Keystone's suit for damages alleged negligence, strict liability under § 402A, and breach of warranty, but the breach of war-

ranty allegations were abandoned. The trial court granted summary judgment for Enstrom, holding that the purchase agreement language was effective against both the negligence and strict liability causes of action.

The federal appellate court undertook, absent illumination on the subject by the appellate courts of Pennsylvania, an evaluation of the proper roles of § 402A and the Code. Noting in connection with § 402A a social policy aimed at protecting the average consumer from blanket immunization of a manufacturer or seller through use of standardized disclaimers, the court said that in a setting where the buyer and seller are both business entities in a position to effectively and fairly bargain, the social policy loses its *raison d'etre*, and the transaction tends to be more influenced by the Code than by the consumer oriented § 402A. The court concluded that because the Code is tolerant of disclaimers, the same philosophy would be equally approving of a negotiated waiver of § 402A. The court then concluded, however, that the summary judgment was error because the purchase agreement language itself, without testimony or documentation, failed to show a clearly expressed waiver of negligence or strict liability under Pennsylvania's stringent standards of waiver so as to exculpate Enstrom from either negligence or strict liability in tort.

In *Sterner,* Page rebuilt and sold to Sterner an airplane engine warranted for the first one hundred hours or six months. After 538 hours of flying time during a period of one year, the engine failed, forcing a landing which damaged the plane but caused no personal injuries. Sterner, suing on grounds of warranty, negligence and strict liability, suffered a summary judgment upon the trial court's finding that the carefully negotiated specific warranties in the sale between knowledgeable parties precluded a lawsuit under either implied warranty or § 402A.

Reversing the summary judgment for a development of the facts, the federal appellate court held that the clear language of the freely entered into warranty disclaimer did not contain the specificity required by Oklahoma law to bar an action in strict liability or negligence. The rationale expressed was that the inapplicability of the traditional concepts of contract law to strict liability in tort cases precludes a contractual disclaimer from being a valid defense to strict liability in tort, and that the warranty disclaimer did not clearly and explicitly exculpate Page from its alleged negligence.

Accordingly, that portion of the judgment decreeing recovery from Hawkins and Shivers, who did not appeal, is left undisturbed. That portion of the judgment decreeing that Curry County Spraying Service, Inc., and Cravens, Dargan & Company recover from Mid Continent Aircraft Corporation, which questioned only its liability, is affirmed.

ROBINSON, Justice, dissenting.

I respectfully dissent.

Plaintiff-buyer sued defendant-seller of a used aircraft for the cost of repair and loss of use during time of repair of the aircraft which crashed because of a defect in the engine. Neither plaintiff nor defendant knew of the defect. Defendant had done no work on the engine and neither plaintiff nor defendant knew or reasonably could have known of the defect. Plaintiff made its own investigation and assessment of the condition of the aircraft before purchase and had access to the same information as the defendant.

The aircraft in question was sold "as is"; thus, it was sold with an express disclaimer of any implied warranty of fitness. Tex. Bus. & Comm. Code Ann. § 2.316(c) (1968).

The sole question is whether strict liability in tort, as delineated by § 402A of Restatement (Second) of Torts (1965) and as adopted by our Supreme Court in *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787

(Tex.1967) should be extended to include damage to the defective product itself. I am of the opinion that it should not.

The doctrine of strict liability in tort evolved in response to the failure of the law governing commercial transactions, partly because of the requirement for privity, to provide an adequate remedy for physical injuries resulting from the consumption and use of unreasonably dangerous products. The loss occasioned by such injuries was often great and the rationale of the evolving doctrine was that the manufacturer was better able to assume the loss or to distribute the loss to the consuming public.

It does not follow that strict liability in tort should be extended to compensate a buyer for unfulfilled commercial expectations. Liability for loss or damage to the product sold, as well as other commercial losses, is not only adequately but better governed by the provisions of the Uniform Commercial Code. Those losses are properly the subject of negotiation and contract between the parties. This is particularly true because the Restatement rule of strict liability in tort makes no distinction between new and used products and between the liability of the manufacturer and that of the intermediate seller or retailer. I would not extend the doctrine of strict liability in tort, willy-nilly, where the compelling social policy reasons for the doctrine do not exist. *See, Long v. Jim Letts Oldsmobile, Inc.,* 135 Ga.App. 293, 217 S.E.2d 602 (Ct.App.1975); *Price v. Gatlin,* 241 Or. 315, 405 P.2d 502 (1965); *Cooley v. Salopian Industries, Ltd.,* 383 F.Supp. 1114 (D.S.C. 1974); and Sales and Purdue, *The Law of Strict Tort Liability in Texas,* 14 Hous.L. Rev. 1, 141–143, 144–148 (1977).

I would reverse that portion of the trial court judgment which grants recovery to plaintiff against Mid Continent Aircraft Corporation and here render judgment that plaintiff take nothing as to that defendant.

## ON MOTION FOR REHEARING

There is language in Mid Continent Aircraft Corporation's motion for rehearing ascribing to the majority opinion a holding that the Restatement (Second) of Torts § 402A rule of strict liability gives a right of recovery for purely economic loss. The language operates on a misconstruction of the opinion, for we clearly pointed out that the law of sales, and not the rule of strict liability, applies to purely economic damages.

The holding of the majority is that the rule of strict liability imposes on one who sells a product in a defective condition, *which renders the product unreasonably dangerous* to the user or consumer or to his property and which causes physical harm to the product itself, liability for that physical harm, unless knowledgeable parties of equal bargaining strength otherwise define, as between themselves, their scope of responsibility for strict liability to which an "as is" contractual sale does not apply. Because Mid Continent confined the appellate issue to whether or not it had any liability, it excluded from our consideration either the measure or the amount of damages found by the trial court.

The motion for rehearing is overruled.

ROBINSON, J., dissents to the overruling of the motion for rehearing.