This is an industrial injury case, presenting theories for relief against two suppliers of an inherently dangerous chemical compound; the relief is sought pursuant to the warranty provisions of Alabama's version of the Uniform Commercial Code. This appeal is from a summary judgment in favor of the Defendants, Union Oil Company and Cone Solvents, Inc.
The facts are as follows: John Shell, Plaintiff, was an employee of the Goodyear Tire and Rubber Company at its Gadsden plant, where he worked in the truck tube repair department. As a part of his job with Goodyear, Shell came into contact with a naphtha product supplied by Defendants; that product contained benzene, a carcinogen known to cause leukemia. This product was purchased by Goodyear on a bid basis, in compliance with its specifications, which limited the amount of benzene any shipment could contain. Upon delivery, Goodyear tested a random sampling of the shipments to assure that they conformed to its specifications.
At Goodyear's request, Defendants furnished material safety data sheets on benzene. The sheets specified that when using benzene, impermeable protective gloves should be worn and a barrier cream should be used to prevent absorption into the skin; that the amount of benzene in the air should be limited to a certain level; and that, if that level should be exceeded, a gas mask should be worn; that goggles were required; and that adequate ventilation was necessary. These safety data sheets also recommended, in case of skin contact with benzene, that the skin area affected be flushed with water for at least 15 minutes. The invoices for benzene sold to Goodyear by Cone Solvents warned that "excessive inhaling of vapors or prolonged contact with skin may be harmful."
Shell brought suit against the suppliers of the cancer causing solvent under separate theories of breach of warranty of merchantability and breach of warranty of fitness for a particular purpose. This appeal challenges the trial judge's action in granting Defendants' summary judgment.
In its simplest terms, the questions presented are:
1) Was there a duty owed, i.e., was there an implied promise?
2) If so, was that duty breached, i.e., was the promise unperformed? and
3) Did that duty extend to this Plaintiff, i.e., was the obligation of performance intended for Shell's protection? Shell can prevail, of course, only if the answer to all three questions is "yes."
If we assume a "yes" answer to each of the first two questions, then the third question must be answered in the affirmative, in light of Code 1975, § 7-2-318:
 "Third-party beneficiaries of warranties express or implied.
 "A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller *Page 571 
may not exclude or limit the operation of this section."
Therefore, we will concentrate on the first two questions.
 I
Plaintiff's first theory is based upon breach of warranty of merchantability, and he relies on § 7-2-314, which reads in part:
"Implied warranty: Merchantability.
 "(1) Unless excluded or modified (section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
 "(2) Goods to be merchantable must be at least such as:
 "(a) Pass without objection in the trade under the contract description; and
 "(b) In the case of fungible goods, are of fair average quality within the description; and
 "(c) Are fit for the ordinary purposes for which such goods are used; and
 "(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
 "(e) Are adequately contained, packaged, and labeled as the agreement may require; and
 "(f) Conform to the promises or affirmations of fact made on the container or label if any."
Plaintiff's implied warranty of merchantability theory, as we understand it, is to the effect that, because the substance supplied by Defendants caused cancer, it could not be "fit for the ordinary purposes for which such goods are used"; that is, because this is a cancer-causing substance, it is unreasonably dangerous, and, therefore, cannot be merchantable. Such an argument ignores the clear distinction between causes of action arising under tort law and those arising under the U.C.C. as adopted in Alabama. A Texas court recognized that distinction in Mid Continent Aircraft Corp. v. Curry County SprayingService, Inc., 553 S.W.2d 935 (Tex.Civ.App. 1977):
 "[U.C.C.] law, whose statutory language makes no reference to tort law in connection with products liability, concerns itself with the quality of the product by establishing standards of merchantability for a particular purpose . . . [while the tort law] concerns itself with safety standards by imposing strict liability upon one who sells an unreasonably dangerous product which causes physical harm. The considerations supporting either of the principles are not affected by the considerations underlying the other, and the standards of quality of a product, with the attendant risk of the bargain, are entirely distinct from its standards of safety, with a possible unreasonable risk of harm. It follows that a violation of the standards of safety which results in physical harm to the unreasonably dangerous product itself subjects the seller to the tort rule of strict liability." 553 S.W.2d at 940.
See, generally, Casrell v. Altec Industries, Inc.,335 So.2d 128 (Ala. 1976); and Atkins v. American Motors Corp.,335 So.2d 134 (Ala. 1976).
Whether this product was unreasonably dangerous, therefore, is not a question properly addressed in an action brought under the provisions of the U.C.C. That question could properly be raised in an action brought under Alabama's Extended Manufacturer's Liability Doctrine (A.E.M.L.D.), but not in this U.C.C. action for breach of warranty.
To cover the initial bare bones question (Was there a duty owed?) with flesh, we should reask the question: Did the sale of the subject product give rise to an implied warranty of merchantability in the sense that these two manufacturers promised the employee that he would not be injured by his use of or contact with their product? The answer must be made in the *Page 572 
context of § 7-2-314: "[Whether this product was] fit for the ordinary purposes for which such goods are used." In this instance, the product — made to Goodyear's specifications — performed the job it was intended to do; and the manufacturers' warnings and precautions, accompanying the products, were in keeping with their knowledge of its inherent dangers. Thus, any duty arising under this section of the Code was not breached. Indeed, more precisely, these undisputed facts do not give rise to a warranty of merchantability, as contended by Shell.
The implied warranty mandated by this section of the U.C.C. is one of commercial fitness and suitability, and a private right of action is afforded only where the user or consumer is injured by the breach of that warranty. That is to say, the U.C.C. does not impose upon the seller the broader obligation to warrant against health hazards inherent in the use of the product when the warranty of commercial fitness has been complied with. Those injured by the use of or contact with such a product, under these circumstances, must find their remedy outside the warranty remedies afforded by the U.C.C. For an excellent discussion of this subject, see J. White R. Summers, Handbook of the Law Under the Uniform Commercial Code, § 9-7, pp. 350-353 (2d ed. 1980).
Therefore, we find no error by the trial judge in determining that there was no genuine issue of material fact in dispute, and that the Defendants were entitled to judgment as a matter of law.
 II
The second action was brought under the theory of breach of the warranty of fitness for a particular purpose provided for in the Code as follows:
 "§ 7-2-315. Implied warranty: Fitness for particular purpose.
 "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under section 7-2-316, an implied warranty that the goods shall be fit for such purpose."
While privity is not a requirement, the injured third party beneficiary can have no more interest than the principal parties. Because Goodyear set the specifications for this product, it did not rely on "the seller's skill or judgment to select or furnish suitable goods." Goodyear was well aware of the connection between benzene and leukemia at the time it set the standards which these Defendants were required to meet. Because Goodyear, the buyer, did not rely on the seller's skill or expertise, as required by § 7-2-315, no duty on the part of Defendants arose under this section of the Code. See Donald v.City National Bank, 295 Ala. 320, 329 So.2d 92 (1976).
Therefore, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.