Johnny C. McCLAIN and Annie
McClain, et al., Plaintiffs,

v.

METABOLIFE INTERNATIONAL,
INC., Defendant.

No. CIV.A.CV 01–BU–1801S.

United States District Court,
N.D. Alabama,
Southern Division.

March 27, 2002.

Robert B Roden, Shelby & Cartee LLC, Archie C Lamb, Jr, Law Offices of Archie Lamb LLC, Birmingham, for Johnny C McClain, Annie McClain, Shirley Franks, wife, Roman L Franks, husband, Wilmer Hudson, husband, Gertha Jones, wife, Connie Thornburg, wife, Jeffrey H Thornburg, husband, Roberta Wright, individually, plaintiffs.

Cavender C Kimble, Mark E Tindal, Balch & Bingham LLP, Birmingham, John P Kavanagh, Jr, Edward G Bowron, Pierce Ledyard Latta Wasden & Bowron PC, Mobile, for Metabolife International, Inc., a corporation, defendants.

## MEMORANDUM OPINION & ORDER

BUTTRAM, District Judge.

In the above-styled action, Plaintiffs Annie McClain, Shirley Franks, Wilmer Hudson, Connie Thornburg and their respective spouses Johnny McClain, Roman Franks, Gertha Jones and Jeffrey Thornburg bring sundry state law claims against Defendant Metabolife International, Inc.[1] The Court's jurisdiction over this matter is founded on diversity, 28 U.S.C. § 1332. Annie McClain, Shirley Franks, Wilmer Hudson and Connie Thornburg allege that Defendant is liable to them for injuries sustained due to consumption of Metabolife 356, a diet product containing, *inter alia*, ephedrine and caffeine.[2] Plaintiff's First Amended Complaint contains six dif-

ferent counts. In Count One, Plaintiffs assert negligent, reckless or wanton failure to warn of the dangers of Metabolife 356 and failure to test properly such product. In Count Two, Plaintiffs allege that Defendant employs deceptive advertising and promotional materials in selling its product. In Count Three, Plaintiffs assert claims under the Alabama Extended Manufacturer's Liability Doctrine (the "AEMLD"). In Count Four, Plaintiffs allege negligent, reckless, or wanton marketing of Metabolife 356. In Count Five Plaintiffs allege breach of the implied warranty of merchantability, and in Count Six allege breach of implied warranty of fitness for a particular purpose. In Count Seven, the Spouse–Plaintiffs assert claims for loss of consortium.

Before the Court is Defendant's Motion for Summary Judgment (Doc. 33). For the reasons expounded below, the Court concludes that Defendant's motion is hereby DENIED IN PART and GRANTED IN PART.

## II. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Anderson*

---

1. The spouse-plaintiffs bring claims for loss of consortium.

2. Plaintiffs Shirley Franks, Connie Thornburg and Annie McClain ingested Metabolife 356 for some period of time and then suffered strokes; Plaintiff Wilmer Hudson ingested Metabolife 356 for some period of time and then suffered a heart attack.

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for the motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. However, "Rule 56 ... does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996); *see also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub. nom.,* 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995).

Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 523 (11th Cir.1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson,* 101 F.3d 1378, 1380 (11th Cir.1996) (citing *Hale v. Tallapoosa Co.,* 50 F.3d 1579, 1581 (11th Cir.1995)).

## III. *DISCUSSION*

On this motion, Defendants argue that five of Plaintiffs' seven claims are "subsumed" within the AEMLD and due to be dismissed. Moreover, Defendant argues that Plaintiffs' AEMLD claim cannot withstand its motion because the Plaintiffs are obliged to establish causation using expert testimony and, since Plaintiffs' expert Dr. Hisham Hakim produced reports inadequate under Fed.R.Civ.P. 26(a)(2)(B), Plaintiffs cannot maintain their AEMLD claim. The Court will deal with the tines of this compound argument *seriatim.*

### A. *"Subsumed" under the AEMLD?*

■ Defendants cite a number of cases for the proposition that the AEMLD is a doctrinal leviathan, swallowing up all of Plaintiff's claims. In order to determine the merit of that assertion, the Court will briefly examine the AEMLD. The Alabama Supreme Court first announced the adoption of the AEMLD in *Casrell v. Altec Industries, Inc.,* 335 So.2d 128 (Ala.1976). Under this doctrine, a manufacturer supplier, or seller "who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, is negligent as a matter of law." *American States Ins. Co. v. Lanier Business Products,* 707 F.Supp. 494, 495 (M.D.Ala. 1989); *see also, Entrekin v. Atlantic Richfield Co.,* 519 So.2d 447, 449 (Ala.1989).

■ To establish liability under the AEMLD, a plaintiff must prove:

(1) he suffered an injury of damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. ,

(2) Showing these elements, the plaintiff has proved a prima facie case although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

*Casrell,* 335 So.2d at 132–33.

■ While the AEMLD has much in common with the doctrine of strict liability in tort found in § 402A of the *Restatement (Second) of Torts* (1965), it is more accurately described as a hybrid of strict liability and traditional negligence concepts. *See Casrell,* 335 So.2d at 132. On the one hand the AEMLD is akin to strict liability because selling an unreasonably dangerous product—that is, a "defective" product—is deemed to be negligent as a matter of law: "[l]iability ... attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks." *Atkins v. American Motors Corp.,* 335 So.2d 134, 141 (Ala.1976). On the other hand, in contrast to the purely "no-fault" version of strict liability found in the *Restatement,* the AEMLD retains various affirmative defenses, including contributory negligence, assumption of risk, and, under certain circumstances, lack of causal connection. *Casrell,* 335 So.2d at 134.

■ The hybrid nature of the AEMLD has the consequence of being the sole cause of action for negligence when the factual basis for the charge of negligence is that the defendant placed an unreasonably dangerous product into the stream of commerce. *See, e.g., Atkins,* 335 So.2d at 134 ("[T]he gravamen of the [AEMLD] action is that the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff or damaged his property when such product, substantially unaltered, was put to its intended use.")

■ In the instant case, however, Plaintiffs do not press any claim akin to a negligent, wanton or reckless *design defect* claim. Count One of Plaintiffs' Complaint is comprised of two separate claims. The first "sub-claim" is for "negligent, reckless, or wanton failure to warn" users of Metabolife 356 of the latent dangers inherent in the product. The Eleventh Circuit recently noted that the Alabama Supreme Court in *Veal v. Teleflex, Inc.,* 586 So.2d 188 (1991), the case most often cited for the "merger" of claims proposition, did not actually involve a failure to warn claim, but only a negligent or wanton design claim. *See Spain v. Brown & Williamson Tobacco Corp.,* 230 F.3d 1300, 1310 n. 12 (11th Cir.2000). Indeed, as the *Spain* Court noted, the District Court in *Tillman v. Reynolds Tobacco Co.,* 89 F.Supp.2d 1297, 1299–1300 (S.D.Ala.2000) (Hand, J.)(collecting the cases) explicitly recognized that Alabama Courts have allowed negligent failure to warn claims to proceed separate from AEMLD claims, while they have not allowed separate negligent design claims. *But see Johnson v. General Motors Corp.,* 82 F.Supp.2d 1326, 1328–29 (S.D.Ala.1997) (Hand, J.) (concluding that plaintiff's failure to warn claim could not proceed independent of plaintiff's AEMLD claim). This distinction makes perfect sense, as design defect claims are fundamentally different from failure to warn claims. It is axiomatic that the essence of an AEMLD claim is the defendant's putting a defective product into the stream of commerce. One can envision manifold instances in which a plaintiff might press a claim alleging not that a *product* is unreasonably dangerous, but rather that the absence of inexpensive and simple *warnings* caused injury. *See, e.g., Ayers v. Johnson & Johnson Baby Products Co.,* 117 Wash.2d 747, 818 P.2d 1337 (1991) (verdict for plaintiffs affirmed on failure to warn claim relating to the accidental death

of infant after ingesting baby oil). In such a case, the claim being advanced has nothing to do with the defendant having put into the stream of commerce an unreasonably dangerous product; rather, the claim has everything to do with the defendant's decision not to take certain precautions unrelated to the product's design. In the instant case, Plaintiffs may therefore maintain their negligent failure to warn claim apart from their AEMLD claim. Defendant's motion for summary judgment with respect to Plaintiffs' failure to warn claim in Count One is therefore DENIED.

■ The second "sub-claim" of Count One, alleging liability on account of Defendant's "failure to test" the product in question, may not proceed. Plaintiffs have not directed the Court's attention to a single authority supporting the maintenance of such a claim under Alabama law, nor is the Court independently aware of any such authority. Therefore, summary judgment with respect to Plaintiff's negligent "failure to test" claim, as a separate cause of action, is GRANTED, and such claim DISMISSED WITH PREJUDICE.[3]

■ Plaintiffs' Count Two alleges that Defendant engaged in deceptive advertising, fraud, and suppression because its promotional materials and advertising deceived and misled Plaintiffs. Specifically, Plaintiffs contend (a) Defendant did not warn of the dangers of Metabolife 356;(b) Defendant failed to disclose their failure to test the product adequately; (c) Defendant

failed to suggest to consumers that other modes of weight loss are more safe than drug-induced weight loss; and (d) Defendant stated that the product was "laboratory tested," but it should have stated that it was not "clinically tested." *See* Plaintiffs' Amended Complaint, Doc. 4, pp. 3–4. Defendant does not argue that Plaintiffs' fraud claims are subsumed by the AEMLD.[4] Indeed, the Court finds that there is persuasive authority to the contrary. *See, e.g., Chase v. Kawasaki Motors Corp.,* 140 F.Supp.2d 1280, 1291–1293 (M.D.Ala.2001) (Albritton, C.J.) (treating AEMLD and fraud claims separately, implicitly recognizing the independence of the two causes of action). Therefore, Defendant's motion for summary judgment with respect to Plaintiffs' Count Two is hereby DENIED.

■ In Count Four Plaintiffs assert a claim for negligent marketing of Metabolife 356. The Court is unaware of a single authority recognizing a separate cause of action under Alabama law for "negligent marketing." Therefore, the Court finds that Defendant's motion for summary judgment with respect to such claim is hereby GRANTED, and such claim is hereby DISMISSED WITH PREJUDICE.[5]

■ In Counts Five and Six, Plaintiffs allege Defendant breached implied warranties of merchantability and fitness for a particular purpose, respectively. In *Shell v. Union Oil Co.,* 489 So.2d 569, 571–72

---

**3.** However, obviously Plaintiffs may marshal the argument that Defendant's failure to test Metabolife 356 contributed to it being an unreasonably dangerous product.

**4.** See Defendant's Brief in Support of its Motion for Summary Judgment, Doc. 34, at p. 4. While Defendant does state that Count Two of Plaintiffs' Amended Complaint is due to be dismissed, Defendant fails to characterize that claim as one sounding in fraud. Whether due

to oversight or mistake, the result is the same: Defendant has failed to challenge Plaintiffs' Count Two.

**5.** Again, Plaintiffs may argue that the manner in which Metabolife 356 was marketed contributed to it being an "unreasonably dangerous product." The Court is simply noting that there can be no separate cause of action for "negligent marketing."

(Ala.1986), the Alabama Supreme Court parsed the distinctions between bringing product liability claims under the U.C.C. as opposed to under one of the primary tort causes of action. In that case, the plaintiff proceeded with warranty claims under the following theory: because the substance supplied by the defendants (benzene) caused cancer, it could not be "fit for the ordinary purposes for which it is used" and, therefore, could not be merchantable. *Id.* at 571. The Court reasoned that the U.C.C. is concerned with product *quality*, while products liability law (viz., the AEMLD) is concerned with product *safety*. The Court held that, when the essence of the claim is that the product in question is unreasonably dangerous, the AEMLD is the appropriate avenue through which redress might be sought. As a result, the *Shell* Court affirmed dismissal of the warranty claims. In the instant case, Plaintiffs do not contend that Metabolife 356 was not fit for the purpose for which it was sold, i.e. weight loss. The essence of their claim is that Metabolife 356 is unreasonably dangerous, and lacked minimally appropriate warnings of the product's latent dangers. Plaintiffs' warranty claims are not so much "subsumed" by the AEMLD as they are simply inapposite and non-responsive to Plaintiffs' alleged injuries and claims. Therefore, Defendant's motion for summary judgment is hereby GRANTED with respect to Plaintiffs' Counts Five and Six and such claims are DISMISSED WITH PREJUDICE.

### B. *Plaintiffs' AEMLD Claim and Expert Testimony*

Defendant argues that Plaintiffs' AEMLD claims are due to be dismissed because expert testimony is the required means of proving causation under such cause of action, and, because Plaintiffs' expert Dr. Hakim submitted deficient disclosure reports, his testimony should be excluded. Defendant is partially correct.

The Court agrees that an expert is required to prove causation in this case, as the interplay between ephedrine, caffeine, and the other ingredients in Metabolife 356, the varying states of pre-existing ill-health of Plaintiffs, and their various ultimate injuries is "complex and technical in nature." *See, e.g., McPhail v. Mitsubishi Motor Manufacturing of America, Inc.,* 80 F.Supp.2d 1309, 1313 (S.D.Ala.1997). However, Dr. Hakim's testimony is not now due to be excluded.

Perhaps some of the present confusion apparent from the parties' various court papers stems from this Court's failure properly to explicate its reasoning in its Order dated January 22, 2002 (Doc. 31). Defendant's "Motion to Strike Report and Testimony of Plaintiffs' Expert Hisham Hakim, M.D." (Doc. 20) seemed to indicate that there was something extant at that time that the Court *could* strike. In other words, Defendant did not ask the Court to prevent Dr. Hakim from testifying in the future as a sanction for having disclosed inadequate reports; rather, it asked the Court to strike a report not before it.

As the Court indicated in its January 22, 2002 Order, Dr. Hakim's Rule 26 Reports were likely deficient insofar as they lacked a sufficient basis for the conclusions reached, as required by Rule 26(a)(2)(B). The Court has discretion in selecting the appropriate sanction for violations of Rule 26, as it does in remedying all discovery violations. Sanctions for violations of Rule 26(a)(2)(B) are found in Rule 37(c)(1):

> A party that without substantial justification fails to disclose information required by Rule 26(a) ... shall not, unless such failure is harmless, be permitted to use as evidence at trial ... any ... information not so disclosed. In addition to or in lieu of this sanction, the court ... may impose other appropriate sanctions.

Therefore, if the deficiencies in Dr. Hakim's reports were "substantially justified," or were harmless in effect, the preclusion of his subsequent testimony would not be required.

■ The deficiencies in Dr. Hakim's Reports were harmless. Defendant has actually deposed Dr. Hakim, and is not now arguing that it was caught in some sort of "ambush." The Court recognizes that merely having to depose a party on information that should have been disclosed in a Rule 26 Report is a form of prejudice. However, it does not appear that Plaintiffs' were attempting to "hide the ball" in any way. Without a finding of bad faith or gamesmanship on the eve of trial, many courts are loathe to invoke the strong medicine of precluding expert testimony. *See, e.g., Stein v. Foamex International, Inc.,* 2001 WL 936566 * 6 (E.D.Pa.). The Court also is persuaded by the fact that Plaintiff supplemented Dr. Hakim's Reports, and Defendant has not argued that such supplements are deceitful, but merely that they are not timely. The Court concludes that Defendant has suffered no prejudice and therefore that the failings in Dr. Hakim's Reports were "harmless."

■ As Defendant has already done, the proper avenue through which to challenge the admissibility of Dr. Hakim's testimony is by filing a *Daubert* motion. *Cf. Travelers Property & Casualty Corp. v. General Electric,* 150 F.Supp.2d 360, 365–66 (D.Conn.2001) ("The inadequacy of [plaintiff's expert disclosure] and the weaknesses evident in his deposition testimony, however, are not dispositive of the motion in limine. The court must determine whether the opinion that [the expert] more fully articulated during the ... *Daubert* hearing is admissible at trial under Fed. R.Evid. 702 and the principles of *Daubert* and *Kumho Tire.* Simply put, Rule 702 and *Daubert* set standards for the admissibility of trial evidence, not requirements of pretrial procedure. If [the expert] has a relevant and reliable opinion to offer that will assist the trier of fact to determine the cause of the [injuries] at issue, that opinion should be admitted into evidence.").

Finally, aside from Dr. Hakim, Plaintiffs have since offered another expert to provide causation testimony. Therefore, even if at this stage of the proceedings the Court had decided to strike Dr. Hakim's testimony, Plaintiffs would still have enough expert testimony to survive Defendant's instant motion. The mettle of Mr. James O'Donnell's testimony, like that of Dr. Hakim, will be tested when this Court has under submission Defendant's *Daubert* motion. Therefore, Defendant's motion for summary judgment is due to be DENIED with respect to Plaintiffs' AEMLD claim, as they have sufficient expert testimony to present a question of fact as to causation of Plaintiffs' injuries.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Defendants' Motion for Summary Judgment (Doc. No. 33) is hereby GRANTED with respect to Plaintiffs' negligent failure to test claim, negligent marketing claim, and breach of warranties of merchantability and fitness for particular purpose, the Court finding no genuine issue of material and triable fact as to such claims and that Defendant is entitled to judgment as a matter of law. Such claims are hereby DISMISSED WITH PREJUDICE. Defendant's motion is DENIED with respect to Plaintiffs' failure to warn, AEMLD, fraud and loss of consortium claims, as Plaintiffs have raised genuine issues of material fact as to such claims, thus precluding summary judgment against them.